STATE OF NEBRASKA, EX REL. WILLIAM LEESE, ATTORNEY GENERAL, V. THE ATCHISON & NEBRASKA RAILROAD COMPANY.

1.  Quo Warranto:  CORPORATION:  PARTIES.  In a proceeding by *quo warranto* against a corporation to forfeit its franchises and oust it from the same for misuser or non-user thereof, the corporation is the only necessary party defendant.   In case of forfeiture the court will take the necessary steps to protect the rights of other parties in the premises.

2.  Railroads:  CONSOLIDATION.  Section 89 of chapter 16 of the Compiled Statutes authorizes the consolidation of two lines of railway only in cases where the two roads, when so consolidated, will form a continuous line without break of gauge or interruption.

3.  ———:  LEASING RAILROADS.  Section 94, chapter 16 of the Compiled Statutes authorizes the leasing of a railroad constructed by another company only in cases where the road of the lessee and of the company making the lease will form a continuous line.

4.  ———:  ———:  CASE STATED.  The Atchison & Nebraska railroad, extending from Atchison, Kansas, to Lincoln, Nebraska, was completed to Lincoln in 1871, and leased to the B. & M. railroad in 1880.  *Held*, That it did not form a continuous line with the B. & M. railroad, and was not within the

provisions of the statute authorizing the making of a lease, and that such lease was unauthorized.   The mention in the statute of continuous or connected lines excludes all others.

5.   **Corporations:** CHARACTER AND POWERS.  The powers of a corporation organized under legislative statutes are such, and such only, as the statutes confer.   The charter of a corporation is the measure of its powers, and the enumeration of these powers implies the exclusion of all others.

6.   **Railroads:** LEASING ROAD WITHOUT AUTHORITY.  Where a railway company without authority of law leases its road to another railway company, with all its rights, property, and franchises, for a long period of time, it thereby abandons the operation of its road, and is subject to forfeiture.

7.   ———: CONSTITUTIONAL LAW.  Section 3, article XI. of the constitution prohibits any railroad corporation from consolidating its stock, property, franchises, or earnings, in whole or in part, with any other railroad corporation owning a parallel or competing line.   The word consolidate in the constitution is used in the sense of join or unite.

8.   ———: ———.  Section 5, article XI. of the constitution prohibits the issuing by a railway corporation of stock or bonds except for the consideration actually received.   One of the objects of this provision is to enable the public to ascertain the actual cost of such railway in the state, and to enable the legislature to pass just laws fixing an equitable rate of taxation, and for the transportation of persons and property, so that justice may be done alike to the railway company, the public, and private individuals.

ORIGINAL information in *quo warranto*.

*William Leese, Attorney General (C. G. Dawes* with him), for relator.

1.   The charter of a railroad corporation is the law of our state and the articles of incorporation made thereunder, and is the measure of its power, and the enumeration of those powers implies the exclusion of all others.   And the leasing of its franchise and the conveyance of all its property to a competing railroad corporation is beyond the powers of this corporation, and is a willful act of misuser

and against public policy. *Penn. R. R. Co. v. St. Louis, etc., R. R. Co.,* 24th American & Eng. R. R. Cases, pp. 69 and 72. *Thomas v. R. R. Co.,* 101 U. S., pp. 71 and 78. *S. C.,* 118 U. S., p. 296. *Tippecanoe Co. v. Lafayette R. Co.,* 50 Ind., 108. *Davis v. Old Colony R. R. Co.,* 131 Mass., 259. *Elkins v. Camden & Atlantic R. Co.,* 36 N. J. Eq., p. 5, and cases there cited on pages 8, 9, and 10.

2. Our court has held that these repeated and willful acts of misuser or non-user by a corporation, which are of the essence of the contract between it and the state, constitute a just ground of forfeiture of the franchise. *State v. C. B. & N. Ferry Co.,* 11 Neb., 354. *State, ex rel. Atty. Genl., v. Minn. Central Ry. Co.,* 30 N. W. Rep., 816. *People v. Northern R. R.,* 53 Barb., 121. *Commonwealth v. Turnpike Co.,* 5 Cushing, 509. *Conro v. Port Henry Iron Co.,* 12 Barb., 63–64. *Ward v. Sea Ins. Co.,* 7 Paige Ch., p. 294. *In re Jackson Marine Ins. Co.,* 4 Sand. Ch., 596. Morawetz on Corporations, sections 1024 and 1025. 2d Waterman on the Law of Corp., Sec. 385, p. 752. *State, ex rel. Atty. Gen., v. Mill., C., S. & W. Ry. Co.,* 45 Wis., 590 and 592.

3. The contract made by the state was with the A. & N. R. R. Co., and for the privileges granted this corporation agreed to operate and maintain a railroad, and the grant became exhausted when the company ceased to perform the object for which it was created. And it is no excuse or answer to say that the B. & M. or the C., B. & Q. R. R. has continued to operate the road. The contract was not made with either of those companies, but with the A. & N. alone, and does not affect the question of the suspension of the corporate duties by the respondent. *Com. v. Turnpike Co.,* 5 Cushing, 509. *State, ex rel., v. Minnesota Ry. Co.,* N. W. Rep., 816. *Atty. Gen. v. West Wisconsin R. R.,* 36 Wis., 466, syl. 7. *People v. Pontiac Bank,* 12 Mich., 526. Morawetz on Corporations, Sec. 1120 (note

10

3).   *York and Maryland Line R. R. v. Winans*, cited in 101 U. S., 83 and 84.

4.   A grant of corporate powers is to be strictly construed, and there is no authority for one railroad corporation to lease another competing line.   *Penn. R. R. Co. v. St. Louis, etc., R. R. Co.*, 24 A. & Eng. Railroad Cases, pp. 68 and 69.   *Thomas v. Railroad Co.*, 101 U. S., 71.

5.   The act of the respondent in leasing its franchise was a misuser of the same, and was an abandonment of the contract with the state.   And the suspension of the chief object of its creation, its lawful business of maintaining and operating a railroad, is a non-user, and are causes for declaring a forfeiture.   *State, ex rel. Atty. Gen., v. Minnesota Central R. R. Co.*, 30 N. W. Rep., p. 816, and cases cited.   *People v. Albany & Vt. R. R. Co.*, 24 N. Y., 261. Morawetz on Corp., Sec. 1014.

6.   There is no defect of parties.   Maxwell Pleading and Practice, 1883 Ed., p. 713.   *State, ex rel., v. Taylor*, 25 Ohio State, p. 280.   *People v. Hudson Bank*, 6 Cowen, 216.   *Commonwealth v. Turnpike Co.*, 5 Cushing, 511 and 512.

*T. M. Marquett*, for respondent.

1.   Surrender or non-user of franchise; a lease not a consolidation.   *State v. Vanderbilt*, 37 O. St., 638.   *Minneapolis & St. L. Ry. Co.*, 32 N. W. R., 558.   Comp. Stats. of Nebraska, Secs. 2 and 3, Sec. 5, and pp. 246, 247, and 248; Secs. 89, 90, 93, and 94.   *R. R. Co. v. ———*, 23 Ohio St., 168.   *Tayler v. Debuss*, 31 Ohio St., 468.   *R. R. Co. v. Stout*, 26 Ohio St., 242.   *R. R. Co. v. Grand Canal Commissioners*, 21 Pa. St., 9.   *Balsey v. R. R. Co.*, 119 Ill., 70–72.   *Pullman Car Co. v. Mo. Pac.*, 115 V. S., 596.   *Middletown v. Boston & N. Y. Ry. Co.*, 5 A., 706.

2.   The B. & M. had a right to buy the stock.   *Ryan v. Leavenworth, A. & N. R. R. Co.*, 21 Kas., 365.   *Venner v. A., T. & S. F. R. R. Co.*, 28 Fed. Rep., 584.

3. Lease. *State v. St. Paul & Sioux City R. R. Co.*, 28 N. W. Rep., 245. *V. S. v. Little Miami Ry. Co.*, 1 Fed. Rep., 700. *Dietrich v. Lincoln & Northwestern R. R. Co.*, 13 Neb., 43.

4. Forfeiture for misuser; forfeiture of corporate franchises. High on Extraordinary Remedies, Sec. 654. *State v. Canal Co.*, 23 Ohio St., 121.

5. Parties. Maxwell's Pleading and Practice, 42. *Zabriskie v. Smith*, 13 N. Y., 322. *Fisher v. Hall*, 41 N. Y., 416. *Almstead v. Buskirk*, 17 Ohio St., 113. *People v. Flint*, 64 Cal., 51. *Mud Creek Draining Co. v. State*, 43 Ind., 238. *People v. Clark*, 70 N. Y., 520.

6. Cause of forfeiture no longer exists; waiver of forfeiture. *People v. Bank of Niagara*, 6 Cowen, 196–210. *Com. v. P., G. & N. R. A. Co.*, 20 Penn. St., 519. *Commonwealth v. R. R. Co.*, 20 Penn. St., 518. *State v. Carpenter*, 68 Wis., 171–175. *Wood v. Norman*, 85 Mo., 298. 1st Rorer on Railroads, 42. *Foster v. Fitch*, 36 Conn., 239. *Ottawa Hydraulic Co. v. People*, 115 Ill., 281. *State v. Carpenter*, 16 Am. & Eng. R. Cases, 652. *A., T. & S. F. v. Fletcher*, 35 Kas., 236.

7. Constitution not the law by which the A. & N. holds its existence. Comp. Stats. Neb., Secs. 704, 715, p. 829. *State Lottery Co. v. Fitzpatrick*, 3 Woods, 222. *Steacy v. Little Rock & Fort Smith R. R. Co.*, 5 Dillon, 348. *Atlanta v. Gate City Gas Light Co.*, 71 Ga., 106. *Pa. R. R. Co. v. Langdon*, 92 Pa. St., 21. *Commonwealth v. Erie & Western Transportation Co.*, 107 Pa. State, 112. *Hayes v. Commonwealth*, 82 Pa. State, 518. *Lehigh Valley R. R. Co. and Morris Canal & Banking Co. v. Henry McFarlan et al.*, 31 N. J. Eq., 706. *Dodge v. Wooley*, 18 Howard, 331. *R. R. Co. v. McClure*, 10 Wallace, 511. *S. County v. R. R. Co.*, 65 Mo., 123. *Covington v. Bridge Co.*, 10 Bush (Ky.), 69. *Planters Bank v. Sharp*, 6 How., U. S., 301, 320.

*J. M. Woolworth*, of counsel for the trustees in the mortgages upon the defendant company's road, filed a brief, citing, *inter alia:* *People v. The Albany & Vermont R. R. Co.*, 77 N. Y., 232. *People v. Flint*, 64 Cal., 51. *Almsted v. Buskirk*, 17 Ohio St., 113. *Hays v. Comm.*, 82 Pa. St., 518. *Pa. R. R. v. Langdon*, 92 Ib., 21. *Comm. v. Erie Co.*, 107 Ib., 112. *State v. Greer*, 78 Mo., 188. *Pacific R. R. Co. v. Maguire*, 20 Wallace, 36. *White v. Hart*, 13 Wallace, 646. *Delmas v. Ins. Co.*, 14 Wallace, 661. *Marsh v. Burroughs*, 1 Woods, 463. *Lehigh Valley R. R. Co. v. McFarlan*, 31 N. J. Eq., 706. *Pacific R. R. Co. v. Maguire*, 20 Wall., 36. *Wallace v. Long Island R. R.*, 12 Hun., 460. *People v. Oakland Bank*, 1 Doug., 282 (1844). *Attorney General v. Ely R. R. Co.*, L. R., 6 Eq., 106.

MAXWELL, J.

This is an original action brought in this court by the attorney general to oust the defendant from its franchises. The attorney general alleges in the information that, "On the 25th day of April, A.D. 1871, articles of incorporation were duly filed in the office of the secretary of state of Nebraska by A. J. Cropsey, A. A. Egbert, T. E. Calvert, George Morrison, and O. Chanute, duly incorporating, under the laws of the state of Nebraska, the Atchison, Lincoln & Columbus Railroad Company. The object and purpose of this company was to construct, maintain, and operate a line of railroad, with single or double tracks, and with all the necessary branches, fences, bridges, warehouses, elevators, station-houses, and such other appurtenances as might be thought necessary, extending said line of railroad from a point at the southern line of the state of Nebraska, where the Atchison & Nebraska Railroad Company crosses said state line, and from thence running northward and westward, through the counties of

Richardson, Pawnee, Gage, Johnson, Lancaster, Seward, and Butler, by way of Lincoln to the town of Columbus, on the Union Pacific Railway, in Platte county. A copy of the articles of incorporation is attached to the petition as an exhibit.

"2d. That on the 18th day of August, A.D. 1871, and long before the aforesaid line of railroad was completed, the said Atchison, Lincoln & Columbus Railroad Company consolidated all of its stock and property of every kind and nature, with the stock and property of every kind of the Atchison & Nebraska Railroad Company, a corporation organized under the laws of the state of Kansas, and it was agreed in said articles of consolidation, a copy of which was filed in the office of the secretary of state of this state, that the aforesaid two consolidating companies should constitute but one corporation in law, and to be known and named the Atchison & Nebraska Railroad Company." A copy of the said articles of consolidation is attached to the petition, and that part of the line of railroad of the defendant ·lying and being in the state of Nebraska, is sought to be affected by this proceeding.

"3d. Your petitioner would further give the court to understand and be informed that, at the time of the incorporation of the Atchison, Lincoln & Columbus Railroad Company, as well as at the time of the consolidation, the financial circumstances of the defendant were limited, and they were unable to build the said railroad from the south line of the state of Nebraska to Columbus, as aforesaid, and the said company applied to the tax-payers of the several counties through which said line of railroad was to pass for aid, to enable the said company to construct and maintain their railroad as aforesaid.

"4th. That the tax-payers and inhabitants along said proposed line of railroad, for the purpose of obtaining a railroad and getting direct communication with Kansas,

Missouri, Illinois, and other eastern and southern states, did, as in such cases made and provided, vote, issue, and deliver to the defendant a large amount of ten per cent coupon bonds, aggregating, from the counties of Richardson, Pawnee, Johnson, Gage, and Lancaster, more than $500,000.

"5th.    That on or about the 15th day of January, 1872, said railroad was completed to Lincoln, in Lancaster county, Nebraska, and from said day until January 1, 1880, was operated and maintained as a competing line of railroad with the Burlington & Missouri River Railroad Company in Nebraska (a corporation organized under the laws of this state), for all the freight and passenger traffic lying and being between the road of this defendant, and a branch line of the aforesaid B. & M., running from Lincoln, in Lancaster county, to Nemaha City, in Nemaha county, by the way of Nebraska City, on the east side, and with a branch line of said B. & M. running from Lincoln by way of Crete to Beatrice, in Gage county, on the west side of the defendant's line. That during all of the time aforesaid there was a strong competition between the aforesaid lines, thereby producing a reasonable but low rate of charges for freight and passenger traffic, and the people living within the territory above described received a great advantage, by reason of the low and reasonable rates charged for the transportation of freight and passengers on the defendant's railroad, resulting from the competition aforesaid.    That by the competition aforesaid the freight belonging to the people using defendant's line of railroad was shipped south to the city of Atchison, in Kansas, and from there connected with other lines of railroads that were competing with the aforesaid Burlington & Missouri River railroad for Chicago freight, and for other points east.    That freight coming from Chicago and other eastern points to the people living along the line of the defendant's railroad was brought at greatly reduced rates, and all the

people living in the south-eastern quarter of our state received the many advantages derived from competing railroads.

"6th.   That on the first day of January, A.D. 1880, as aforesaid, for the purpose of defrauding the people living along the line of their railroad, and for the purpose of destroying the competition as aforesaid, the said defendant, the Atchison & Nebraska Railroad Company, disregarding its duties to the state and to the public, unlawfully and willfully entered into an agreement with the aforesaid Burlington & Missouri River Railroad Company to lease their said line of railroad, and all their rights, privileges, franchises, and property of every description to the above last named railroad company, and on said last named day the defendant did grant, lease, and demise to the said Burlington & Missouri River railroad, for the full term of nine hundred and ninety-nine years, all of their railroad, roadway, lands connected with the use and operation of their road, and all machine shops, depots, and all easements and appurtenances thereunto belonging, as well as all such property as should thereafter be acquired. [A copy of said lease is attached to and made a part of the petition.]   In pursuance with the terms of said lease; the defendant, on said day, gave to the said Burlington & Missouri River Railroad Company full and absolute possession and control of all its railroad, roadway, rights, privileges, and franchises, its earnings, and property of every description.   And ever since the 1st day of January, A.D. 1880, the defendant company has utterly and willfully failed and neglected to maintain or operate their said railroad or any other railroad in this state, and has failed in the discharge of its duty to the state and to the public during all of said time, whereby the rights, privileges, and franchises of said defendant in the state of Nebraska have become and are subject to forfeiture.

"7th.   That afterwards, on the 5th day of April, 1880,

the defendant conveyed and assigned absolutely all of its lands, bonds, moneys, and property of every description, not included in the lease hereinbefore mentioned, to the aforesaid Burlington & Missouri River Railroad Company."

A copy of said conveyance and assignment is attached to and made a part of the petition.

"8th.    And your petitioner would further show to the court that the defendant's line of railroad and the line owned by the Burlington & Missouri River Railroad Company in Nebraska were not connecting or continuous lines of railroads, but in truth and in fact the two roads were parallel and competing lines, and the lease, conveyance, and assignment as aforesaid were and are *ultra vires*, in violation of section three of article eleven of the Constitution of the state of Nebraska, and against public policy.

"9th.    That on the said first day of January, A.D. 1880, the aforesaid Burlington & Missouri River Railroad Company in Nebraska sold, assigned, and transferred all of their railroads, leaseholds, rights of action, contracts, stock, franchises, and all other property of every description whatsoever, to the Chicago, Burlington & Quincy Railroad Company, a foreign corporation, incorporated under the laws of the states of Illinois and Iowa, and not incorporated under the laws of Nebraska, nor has it filed a copy of its articles of incorporation with the secretary of state of Nebraska."

A copy of the above mentioned deed of sale and assignment is attached to the petition and made a part thereof.

"10th.    That after the defendant made the lease of its railroad and the transfer of all its property, as aforesaid, the management and control of the defendant's line was maintained and operated by the said Burlington & Missouri River railroad, and by the transfer of the said last named company to the Chicago, Burlington & Quincy Railroad Company, the said Chicago, Burlington &

Quincy R. R. Co. still continues to operate and maintain the defendant's line in this state, thereby consolidating all of the property, franchises, and earnings of the defendant's line with the aforesaid competing and parallel lines of the said Burlington & Missouri River Railroad Company, as now owned and controlled by said Chicago, Burlington & Quincy Railroad Company.

"11th. That from and after the date of the above transfer, to-wit, January 1, 1880, the rates of freight for transportation on the defendant's lines were increased by the lessee and its assignee from fifty to seventy-five per cent of the rate charged by the defendant, and in many cases it was doubled. That all competition was destroyed in the south-eastern quarter of the state by reason of the aforesaid transfers, and all the grain, stock, and other classes of freight along the defendant's line, shipped to eastern and southern points, was carried north by the lessee and the volume of business done along the defendant's line was diverted outside of the usual channel of trade. That the people living along the line of the defendant's road are defrauded by the transfers aforesaid, and the large amount of bonds voted and delivered to the defendant, to aid in the construction of the railroad, are without consideration, and yet the said bonds are still presumed to be a legal liability against said counties.

"12th. That the defendant corporation, The Atchison & Nebraska Railroad Company, has ceased to maintain and operate any railroad in the state of Nebraska. That said railroad corporation, The Atchison, Lincoln & Columbus Railroad Company, as consolidated with The Atchison & Nebraska Railroad Company, has willfully failed and neglected to keep up and maintain any railroad in this state, as by their articles of incorporation they are required to do, but on the contrary has abandoned its lawful business, and the end and object for which it was created, whereby the rights and privileges and franchises of said

defendant corporation in this state have become subject to forfeiture. Wherefore plaintiff prays that the corporate rights, privileges, and franchises may be declared forfeited, and the said defendant be ousted therefrom. That all the rights, privileges, and franchises of the defendant within the state of Nebraska be canceled and annulled, and that said corporation be dissolved. That the court may appoint three trustees to take charge of the property of said corporation, to collect the debts, and pay the liabilities, if any, and the surplus paid into the state treasury for the benefit of the school fund, as in other cases of forfeiture. And for such other and further relief as equity and justice may require."

The exhibits attached to the petition and made a part of it show that, on the 24th of May, 1867, certain residents of the city of Atchison, Kansas, organized a corporation under the laws of that state, for the purpose of constructing a railroad from some point in the city of Atchison to some point on the north line of the state of Kansas, not farther west than twenty-five miles from the Missouri river, the length of said railroad not to exceed forty-five miles. The capital stock of said company was fixed at $400,000. In April, 1871, the Atchison, Lincoln & Columbus Railroad Company was organized, under the laws of the state of Nebraska. " The object and purpose of this company are to construct, maintain, and operate a railroad with single or double tracks, and with all necessary branches, fences, bridges, warehouses, elevators, station-houses, and such other appurtenances as may be thought necessary or convenient, extending from a point on the southern line of the state of Nebraska, where the Atchison & Nebraska railroad crosses said state line northward and westward through the counties of Richardson, Pawnee, Gage, Johnson, Lancaster, Seward, and Butler, by way of Lincoln, to the town of Columbus, on the Union Pacific railroad, with a branch road running

westward through the counties of Richardson, Pawnee,
Johnson, Gage, Jefferson, and Saline, to the west line of
the state." The capital stock was fixed at the sum of
$500,000. In August, 1871, the Atchison & Nebraska
Railroad Company and the Atchison, Lincoln & Colum-
bus Railroad Company, were consolidated, under the laws
of this state, the first article of consolidation being as fol-
lows : "The Atchison & Nebraska Railroad Company, a
corporation organized and existing under the laws of the
states of Kansas and Nebraska, has constructed and now
in operation its railroad from Atchison north-westerly to
the state line between Kansas and Nebraska, and the said
Atchison, Lincoln & Columbus Railroad Company, a cor-
poration organized and existing under the laws of the
state of Nebraska, is authorized by virtue of said laws
and its charter to construct, maintain, and operate a rail-
road from a point on the state line between Kansas and
Nebraska, to which the Atchison & Nebraska railroad is
constructed, by way of Lincoln, to Columbus, a point on
the Union Pacific railroad in said state of Nebraska, and
also a certain branch of said railroad named in the articles
of incorporation. And whereas the roads as now con-
structed and authorized to be located and completed in
said states of Kansas and Nebraska, under their respective
charters and the laws of said states, form a continuous
line extending from Atchison to Lincoln, and thence to
Columbus, and are authorized by the laws of said states
of Kansas and Nebraska to consolidate their stock and
property with each other, etc." The articles of consolida-
tion are set out at length, the capital stock of the com-
pany being fixed at $2,000,000.

The defendant demurs to the petition upon two grounds :

1st.  That there is a defect of parties defendant.

2d.  That the facts stated in the information are not
sufficient to entitle the state to the relief prayed for
against the defendant.

The rule is well settled that in a proceeding in *quo war-ranto* to dissolve a corporation or declare a forfeiture of its charter, or to oust it from the exercise of franchises which it usurps, it must be against the corporation itself, and not merely against its individual members. If the corporation has by the abuse or the non-use of its franchises rendered itself liable to the forfeiture of its charter, such forfeiture can properly be declared and enforced only in a proceeding to which the corporation is a party. *State v. Taylor*, 25 O. S., 280. *People v. Bank of Hudson*, 6 Cowen, 217.

In the latter case the court say: "It is objected, in the first place, that the information being against the defendants by their corporate name is bad. To this it may be answered, the information is merely descriptive. It is not an affirmation that the defendants are a corporation, but that, by the name of the president, directors, and company of the Bank of Hudson, or using that name, they have done the acts in the information alleged. And it then calls on them to answer by what authority. Besides, the statute authorizes proceedings against the corporation. The judgment must be against the corporate name. A corporation created by the legislature may lose its franchises by a misuser or a non-user of them. They may be resumed by the government under a judgment upon a *quo warranto* to ascertain and enforce the forfeiture. (9 Cranch, 51.) The judgment to be given is a judgment of seizure, which produces a dissolution of the corporation."

As the proceeding is directed against the corporation itself for misuser and non-user of its corporate franchises, it is the only necessary party defendant in the case. If, however, the court should find it necessary to render a judgment of ouster against the defendant, and vacate and set aside its charter, the rights and *bona fide* claims of all parties against the defendant will be protected. The first ground of demurrer, therefore, is overruled.

Section 89 of chapter 16 of the Compiled Statutes provides : " Whenever the lines of railroad of any railroad companies in this state, or any portion of such lines, have been or may be constructed so as to admit the passage of burden or passenger cars over any two or more such roads continuously, without break of gauge or interruption, such companies are hereby authorized to consolidate themselves into a single corporation, in the manner following : The directors of the said two or more corporations may enter into an agreement, under the corporate seal of each, for the consolidation of the said two or more corporations, prescribing the terms and conditions thereof; the mode of carrying the same into effect; the name of the new corporation ; the number of the directors thereof, which shall not be less than seven ; the time and place of holding the first election of directors ; the number of shares of capital stock in the new corporation; the amount of each share ; the manner of converting the shares of capital stock in each of said two or more corporations into shares in such new corporation ; the manner of compensating stockholders in each of said two or more corporations, who refused to convert their stock into stock of such new corporation, with such other details as they shall deem necessary to perfect such consolidation of said corporations; and such new corporations shall possess all the powers, rights, and franchises conferred upon such said two or more corporations, and shall be subject to all the restrictions, and perform all the duties imposed by the provisions of this subdivision. *Provided,* That all stockholders in either of such corporations shall be paid the market value of said stock at the date of such consolidation."

This is section 18 of an act passed by the territorial legislature, entitled "An act to create and regulate railroad companies," approved February 8, 1864, and is section 89 of chapter 25 of the Revised Statutes of 1866.

The act including this provision was copied substantially

from the statute of Ohio of 1851, "relating to railroad companies." (2 Curwen, 1075.) The construction of this section was before the supreme court of Ohio in *State v. Vanderbilt*, 37 O. S., 590, where it was held that the word "continuously," in the section above quoted, was a restriction upon the power to consolidate, and that this right existed only where the lines when consolidated would form one continuous line over which freight and passengers might be carried without transfer, and that it did not apply to roads which when united would not form a continuous line. The court say: "The attorney general says, and the record supports the statement, that these roads are 'for sixty miles lying parallel and near to each other.' That they are, indeed, in the largest sense, parallel and competing roads, seems to be beyond dispute, and it may be fairly inferred from the record that a leading object in making the consolidation was to destroy that competition. That being true, the lines of these roads are not, in my judgment, 'so constructed as to admit the passage of burden or passenger cars over two or more of such roads continuously,' within the proper meaning of section 3379. That the mere physical ability to pass cars from one road to the other satisfies the statute, is a construction of it which is wholly inadmissible, for the provision requiring such connection would be without meaning. In imposing that restriction upon consolidation, the legislature intended, not merely that the physical fact should exist, but that such consolidation should only be made for the very purpose of passing freight and passengers over both lines, or some material parts thereof not necessarily in a direct or straight line but continuously.     *     *     Consolidation for the transportation of freight and passengers continuously, is a thing which the legislature might well desire to encourage, as it may be advantageous alike to the public and the companies; but corporations have power only as granted by the general assembly ; and where com-

panies situated as these are, being parallel and competing, claim that authority to consolidate has been granted to them, they must be able to point to words in the statute which admit of no other reasonable construction, for it will not be assumed that the law-making power has authorized the creation of a monopoly so detrimental to the public interest. But the statute contains no such words."

This decision, in our view, states the law correctly, and the statute only authorizes the consolidation of two lines of railway, where the lines thus consolidated will form one continuous railroad. As the Atchison & Nebraska City railroad and the Atchison, Lincoln & Columbus railroad, when consolidated, would form one continuous line, the statute authorized such consolidation; that part of the line, however, in Nebraska, is held by said company as a Nebraska corporation, while that in Kansas is held as a Kansas corporation, under the laws of that state.

Section 94, chapter 16 of the Compiled Statutes, provides that, "Any railroad company heretofore or hereafter incorporated may, at any time, by means of subscription to the capital stock of any other company, or otherwise, aid such company in the construction of its railroad, for the purpose of forming a connection of said last mentioned road with the road owned by the company furnishing such aid; or any railroad company existing in pursuance of law, may lease or purchase any part or all of any railroad constructed by any other company, if said company's lines of said road *are continuous or connected as aforesaid*, upon such terms and conditions as may be agreed on between said companies respectively; or any two or more railroad companies whose lines are so connected may enter into an arrangement for their common benefit consistent with and calculated to promote the objects for which they are created. *Provided*, That no such aid shall be furnished nor any purchase, lease, or arrangement perfected, until a meeting

of the stockholders of each of said companies shall have been called by the directors thereof, at such time and place and in manner as they shall designate, and the holders of at least two-thirds of the stock of such company, represented at such meeting either in person or by proxy, and voting thereat, shall have assented thereto."

It will be observed that the authority of one company to aid another in the construction of its railroad is for the purpose of making connection between the two roads. That is, the two roads when connected must form a continuous line. It will also be observed that the right of any company to lease or purchase any part or all of any railroad constructed by any other company is limited to cases where the purchasing company's line and the road purchased are continuous or connected. If the line purchased or leased does not form a connected or continuous line with the road owned by the company purchasing or leasing the same, there is no power given by statute to either make a lease of said railway or hold under the same. This was the state of the law in 1871, when these companies were organized and consolidated, and the statute has remained in that form until the present time.

Section 2, article 2, chapter 72 of the Compiled Statutes, provides: "That it shall be competent and lawful for any railroad company heretofore incorporated or organized, or which may be hereafter incorporated or organized under the laws of an adjoining state, and which shall have extended its railroad into this state, or have become a corporation of this state under the laws thereof, to mortgage, lease, or sell that part of its railroad, and the property, rights, privileges, and franchises connected therewith situated in this state, to any railroad in this state, and the railroad company making such purchase shall thereupon become vested with all the property, rights, privileges, and franchises of the company making such sale, and pertaining to the said railroad so sold, and shall be authorized to

locate, construct, and complete, maintain, and operate the railroad thus purchased, and may receive, hold, and convey all the municipal aid, endowments, and property of any kind whatsoever, upon complying with the terms and conditions upon which the same were to be had, as fully and to the same extent as the railroad company making such sale could have done had no such sale been made."

This act was passed in 1881, and the section only applies to corporations of an adjoining state which shall have extended their railroad into this state and become corporations under the laws thereof, to mortgage, lease, or sell that part of their railroad situated within this state to a railroad company within the state. This section does not repeal sections 89 and 94 of chapter 16 of the Compiled Statutes. Nor does it authorize a railway to lease its entire line, that out of the state as well as that within. That statute, therefore, does not apply to nor aid this case. So far as the power to lease is concerned, requiring the lines to be continuous, chapter 58 of the session laws of 1887 contains certain provisions as to the power to purchase or lease railways, which need not be noticed, as it has no application to the case at bar. The second section of the act contains a provision for the ratification of prior leases and consolidations, which at the most can only legalize acts done in good faith where there was a want of full power to perform the same, but does not apply to cases where leases were made or consolidations effected against the inhibitions of the statute. The lease of the defendant, therefore, is not validated or aided by that statute.

To justify the defendant in leasing its line to the B. & M. R. R. Company, it must be able to point to the exact statute granting such authority, which it has failed to do. *Penn. Co. v. St. Louis, Alton & T. H. Railroad,* 118 U. S., 294. In the opinion of the majority of the court in that case, it is said: "We think it may be stated, as the just result of these cases, and on sound principle, that unless

11

specially authorized by its charter, or aided by some other legislative action, a railroad company cannot, by lease or any other contract, turn over to another company for a long period of time its road and all its appurtenances, the use of its franchises, and the exercise of its powers, nor can any other railroad company, without similar authority, make a contract to receive and operate such road, franchises, and property of the first corporation, and that such a contract is not among the ordinary powers of a railroad company, and is not to be presumed from the usual grant of powers in a railroad charter." This, in our view, is a correct statement of the law.

In *Thomas v. Railroad Company*, 101 U. S., 71, a railroad company in New Jersey had leased its road, franchises, and property for a period of twenty years, giving the lessee complete control thereof, and received as rent one-half the gross sum collected by the lessee, from the operation of the road. The decision turned upon the power of the company under its corporate authority to make the lease. The lessee insisted that a corporation may, as at common law, do an act which is not either expressly or impliedly prohibited by its charter. To this the court responded: "We do not concur in this proposition. We take the general doctrine to be in this country, though there may be exceptional cases and some authorities to the contrary, that the powers of corporations organized under legislative statutes are such, and such only, as those statutes confer. Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others."

The doctrine as above stated meets our hearty approval. If the allegations of the information are true—and they are to be so considered on demurrer to the information—the defendant induced the people along its line, from the

Kansas border to the city of Lincoln, to grant liberal aid for the construction of the road. Every piece of land subject to taxation in the counties along the line of said road is practically mortgaged by the issuing of bonds to aid in building it. The interest has presumably been paid on these bonds to the present time; many of the settlers along such road when the bonds were issued were pioneers, struggling with the hardships, poverty, privations, and difficulties incident to a new country. To many of them, no doubt, the taxes necessary to meet the interest and amount required for the sinking fund have been a burden, and by every one the tax was voted to aid in constructing and operating an independent line of railway. That was the contract of the parties, and the state would be derelict in its duties if it did not compel an observance on the part of the defendant of its duties. The defendant, however, having obtained this bonus, sought to surrender all its powers, rights, and franchises to another corporation for the period of nine hundred and ninety-nine years. So far as the defendant is concerned, it has ceased to operate a railroad, and the charge of mis-user and non-user plainly appears on the face of the record. It is not the policy of the law to allow a railroad company, organized as an independent line, to procure aid on every hand in that character, and after the road is completed sell out to the highest bidder. Honorable and fair dealing are as essential in the dealings of a railroad corporation with individuals and the public in the construction and operation of its road as between individuals in the ordinary affairs of life. A railway company cannot be permitted to act in bad faith with those from whom it has received aid upon certain conditions. Having received the consideration, it must perform on its part, and the parties are entitled to a literal compliance. And while a lessee in a proper case, or assignee or purchaser, will take a road burdened with the conditions, obligations, and duties assumed by the original corporation,

yet there can be no such transfer by lease, assignment, or sale without express statutory authority, and as we find no such authority, and the defendant has been guilty of misuser and non-user of its franchises, they are subject to forfeiture.

We have placed the decision entirely upon the statute, but there are other grounds which will now be noticed.

Section 3, article XI. of the constitution, provides that, "No railroad corporation or telegraph company shall consolidate its stock, property, franchises, or earnings, in whole or in part, with any other railroad corporation or telegraph company owning a parallel or competing line, and in no case shall any consolidation take place except upon public notice of at least sixty days to all stockholders, in such manner as may be provided by law."

Section 5 also provides that: "No railroad corporation shall issue any stock or bonds except for money, labor, or property actually received and applied to the purposes for which such corporation was created, and all stock, dividends, and other fictitious increase of the capital stock or indebtedness of any such corporation shall be void. The capital stock of railroad corporations shall not be increased for any purpose, except after public notice for sixty days in such manner as may be provided by law."

This is an absolute prohibition against a railroad corporation consolidating its stock, property, franchises, or earnings, in whole or in part, with any other railroad corporation owning a parallel or competing line. The word "consolidate" is here used in the sense of join, or unite. The constitutional convention aimed at practical results. The character of the title of the parties operating a railway is of but little moment to the general public, while the requirement that different roads shall continue to be competing lines, as when they were constructed, is of the utmost importance to all. The law cannot be evaded, therefore, by substituting a lease for a deed of conveyance. It will

be observed that there are two classes of railroads to which the prohibition applies, viz., parallel and competing. As to what are parallel roads is not now before the court; but that the defendant was a competing road is alleged in the information, admitted by the demurrer, and clearly shown from the record. It was therefore clearly within the inhibition of the constitution, and neither its stock, franchises, or earnings can be joined to any other competing line. The prohibition against the joinder of these, prohibits the leasing of such roads.

Competition can only be had by securing competing lines, and thus prevent a monopoly in the operation of the roads, and this it did by forbidding the purchase or control of parallel or competing roads under the same management. As the defendant was organized prior to the adoption of the constitution, it is claimed that it would not be subject to this restriction. There is no force, however, in this objection. The corporation was organized to build and operate a railroad from the Kansas line to Lincoln and Columbus. That was the very purpose of its being. It had no authority to lease its road under the statute, and was therefore deprived of no right, and the constitutional inhibition applies to it.

The attorneys for the defendant contend that section 5, Art. XI. of the constitution, applies more particularly to stockholders. It has a much broader scope, however. It was intended to restrict the issue of stock and bonds to the actual consideration received. One of the objects of the provision was to enable all parties to know the actual cost of all railroads within the state, so that the legislature, in providing for taxing them and for regulating the charges for transportation of persons and property, may be enabled to do so advisedly, and pass laws which shall be just, alike to the railway companies, the public, and individuals. In any view of the case, therefore, the defendant's franchises are subject to forfeiture.

The court will not, in the first instance, however, declare a forfeiture, but the lease will be declared void.

The demurrer is overruled. The defendant has leave to answer by the first day of the next term of court.

ORDER ACCORDINGLY.

THE other judges concur.