STATE OF NEBRASKA, EX REL. ATTORNEY GENERAL, V.
ATCHISON & NEBRASKA RAILROAD COMPANY.

FILED NOVEMBER 21, 1893.    No. 3010.

1. **Quo Warranto:** RAILROAD COMPANIES: UNLAWFUL EXER-
CISE OF CORPORATE FRANCHISES: FORFEITURE: SUFFICIENCY
OF EVIDENCE. In *quo warranto* proceedings to declare void the
lease by defendant of its line to another railroad company, and
to annul a subsequent deed of defendant to said lessee, by which
lease and deed it was claimed that a consolidation had been ef-
fected of parallel competing lines not forming a continuous line
without break of gauge or interruption, it is *held*, upon full con-
sideration of all the proofs upon which was made up the report
of the referee, that each of his findings of fact and conclusions of
law adversely to the material averments of the information is
correct. MAXWELL, C. J., dissenting.

2. **The proofs and the report of the referee** being adverse
to each material allegation of the information, such information
is dismissed. MAXWELL, C. J., dissenting.

ORIGINAL action in the nature of *quo warranto* to oust
defendant of its franchise.    *Action dismissed.*

A former opinion in this case upon a demurrer to the
information is reported in 24 Neb., 143.

*William Leese, C. G. Dawes,* and *George H. Hastings,
Attorney General,* for the state.

*T. M. Marquett, J. M. Woolworth,* and *Marquett, Deweese
& Hall, contra.*

RYAN, C.

This cause was considered and certain propositions of
law applicable to the matters alleged in the information
were fully stated in 24 Nebraska, on pages 143 *et seq.*
This was upon a demurrer to the said information on the

grounds of a defect of parties, and because the facts alleged
did not entitle the state to the relief prayed. Upon the
averments of the information, which, for the purposes of
the demurrer, were conceded to be true, it was held that
the lease of the respondent to the Burlington & Missouri
River Railroad Company should be declared void. The
respondent was given leave to answer the information, and,
in due time, its answer was made, averring the existence of
such facts as negatived all infringements of the provisions
of the statutes and constitution of the state of Nebraska,
charged in the information.

On the 24th day of March, 1891, by consent of the re-
spective parties and their counsel, it was ordered that upon
the pleadings, testimony, and exhibits, then ready for final
consideration, this cause should be referred to John H.
Ames, Esq., by whom, thereon, a report should be made
stating his findings of fact and conclusions of law. Ac-
cordingly, on October 1, 1891, said referee filed his report,
in respect to which were deduced and applied five conclu-
sions of law, the last of which was that the information
should be dismissed.

Summarized, the findings of fact relevant and material
to the decision of the issues joined were substantially as
follows: That the Burlington & Missouri River Railroad
Company in Nebraska had, prior to January 15, 1872, con-
structed and acquired by leases lines of railway extending
from Plattsmouth to Lincoln, and from Lincoln, by way of
Crete, through the counties of Lancaster, Saline, and Gage,
to the city of Beatrice, in the last named county, and from
Lincoln, through the counties of Lancaster, Otoe, and
Nemaha, to the town of Brownville, in the county last
named; that said line from Crete to Beatrice practically·
constituted a branch from the main line of said Burlington
& Missouri River Railroad Company extending to Kear-
ney, and, if treated as a prolongation of said main line,
was and is not parallel with, but divergent from the said

line of said defendant at substantially all points; after leaving said city of Lincoln this divergence being so great that the stations of Crete, on the first-named line, and of Hickman, on the defendant's line, the former about twenty miles and the latter about fifteen miles from Lincoln, are geographically more than twenty miles apart; that the line by way of Nebraska City to Brownville is not parallel to, but divergent from the said defendant's line at all points after leaving Lincoln, said divergence being as great as between the two lines above mentioned; all of said lines, however, converging to a common point, which is Lincoln; that from Beatrice to Tecumseh, which is the nearest point on defendant's line, is thirty-five miles, and from Tecumseh to Nemaha City, the nearest point on the Brownville line, is thirty miles; that since January 15, 1872, the lines of the Burlington & Missouri River Railroad Company, of the Chicago, Burlington & Quincy Railroad Company, and of the defendant have, as constructed and maintained, admitted of the continuous passage of cars from one to the other, without detention or break of bulk at Lincoln; that since January 1, 1880, all of said lines have been in the exclusive possession and under the sole control and management of said Chicago, Burlington & Quincy Railroad Company; that defendant's line constitutes a practical continuation and prolongation in nearly a right line southeasterly from Lincoln, Nebraska, to Atchison, Kansas, of the aforesaid line extending from Plattsmouth to Lincoln; and, as such continuation and prolongation, defendant's line, as respects the transportation of freight, has been, and is now, operated by the Chicago, Burlington & Quincy Railroad Company; that, first by lease, and afterwards by deed, the defendant's line of railroad was transferred to the Burlington & Missouri River Railroad Company, by which latter company it was duly, by deed, conveyed to the said Chicago, Burlington & Quincy Railroad Company; that pending the construction of defend-

ant's line of railroad, and in aid thereof, bonds were voted and issued to the defendant to the aggregate amount of $397,700, by the counties of Richardson, Gage, and Lancaster, though upon what inducement the record does not disclose; that previous to January 1, 1880, defendant's line was in very bad repair, and very inadequately equipped with rolling stock, and unable to give a safe or effectual service, and on account of its financial embarrassment the defendant was unable to ameliorate these evils; that since January 1, 1880, the Chicago, Burlington & Quincy Railroad Company has practically reconstructed defendant's line of railroad by putting in new ties and the substitution throughout of new steel rails for the iron rails formerly in use thereon, and has built at Rulo, across the Missouri river, a bridge at a cost of one million dollars, so as to connect with its lines east of the Missouri river, and has placed in repair and furnished with rolling stock the defendant's line, so that now it is safe and efficient for use as a railroad; that within ten miles of Lincoln the Burlington & Missouri River Railroad Company's line and that of defendant were so near each other as to serve on nearly equal terms some of the traffic destined to Lincoln; but with this exception these lines were not competing, and the above exception did not render them within the meaning and effect of the provisions of the constitution of 1875, inhibiting the consolidation of railroad corporations owning parallel and competing lines; that there was no proof of competition for traffic between interstate points, and excepting at Lincoln there was no competition between points within Nebraska and other points outside its limits. The referee further found that such other competition as existed was between shippers stimulated to activity by a system of individual rebates common to the railroad companies previously to the enactment of the interstate commerce law by congress, or arose from occasional fortuitous circumstances, or combinations of circumstances, entirely foreign to the in-

hibitions of the statutes and the constitution of Nebraska. That there was no violation of such provisions by the defendant were substantially the referee's conclusions of law.

To these several findings of fact and conclusions of law there were filed exceptions which challenge the correctness of every conclusion, whether of law or of fact. These exceptions are criticised as inexact, general, and as unavailing as against the findings of the referee, especially as to matters of fact, the contention being that these must stand as the special verdict of a jury. It may be that these points are well taken, and that this case might be disposed of upon the presumption contended for. The magnitude of the interests involved and of the questions presented, as well as the consideration due to an application for a prerogative writ by the state, seemed to require that technicalities should be avoided as far as possible; and the evidence, therefore, has been as carefully read and considered as though no report had been made by the referee, with the same conclusions as had been set forth in his report. As the referee's findings fully and fairly epitomize the evidence as to questions of fact, and as his conclusions of law are in consonance with the principles recognized on the hearing of the cause on demurrer, it would be but a work of supererogation to examine the same matters in detail only to reach the same result. The exceptions to the report of the referee are overruled and the information is

DISMISSED.

MAXWELL, C. J., dissenting.

I am unable to give my assent to the opinion of the commissioners in this case approved by a majority of the court. The case was before this court in 1888, on demurrer to the relation. The demurrer was overruled and leave given to the defendants to answer. It may be well to call attention to the points decided in that case by a unanimous court (*State v. Atchison & N. R. Co.*, 24 Neb., 143), as follows:

" In a proceeding by *quo warranto* against a corporation to forfeit its franchises, and oust it from the same for misuser or non-user thereof, the corporation is the only necessary party defendant. In case of forfeiture the court will take the necessary steps to protect the rights of other parties in the premises.

" Section 89 of chapter 16 of the Compiled Statutes authorizes the consolidation of two lines of railway only in cases where the two roads, when so consolidated, will form a continuous line without break of gauge or interruption.

" Section 94, chapter 16, of the Compiled Statutes authorizes the leasing of a railroad constructed by another company only in cases where the road of the lessee and of the company making the lease will form a continuous line.

" The Atchison & Nebraska railroad, extending from Atchison, Kansas, to Lincoln, Nebraska, was completed to Lincoln in 1871, and leased to the B. & M. railroad in 1880. *Held,* That it did not form a continuous line with the B. & M. railroad, and was not within the provisions of the statute authorizing the making of a lease, and that such lease was unauthorized. The mention in the statute of continuous or connected lines excludes all others.

" The powers of a corporation organized under legislative statutes are such, and such only, as the statutes confer. The charter of a corporation is the measure of its powers, and the enumeration of these powers implies the exclusion of all others.

" Where a railway company without authority of law leases its road to another railway company with all its rights, property, and franchises for a long period of time, it thereby abandons the operation of its road, and is subject to forfeiture.

" Section 3, article 11, of the constitution prohibits any railroad corporation from consolidating its stock, property, franchises, or earnings, in whole or in part, with any other

railroad corporation owning a parallel or competing line. The word ' consolidate' in the constitution is used in the sense of join or unite.

"Section 5, article 11, of the constitution prohibits the issuing by a railway corporation of stock or bonds except for the consideration actually received. One of the objects of this provision is to enable the public to ascertain the actual cost of each railway in the state, and to enable the legislature to pass just laws fixing an equitable rate of taxation, and for the transportation of persons and property, so that justice may be done alike to the railway company, the public, and private individuals."

Many of these points are not referred to in the opinion of the commissioner. Section 3, article 11, of the constitution prohibits any railway company from consolidating its stock, property, franchises or earnings, *in whole or in part*, with any other railroad corporation owning a parallel or competing line. It is admitted in the opinion that " within ten miles of Lincoln the Burlington & Missouri River Railroad Company's line and that of defendant were so near each other as to serve on nearly equal terms some of the traffic destined to Lincoln, but with this exception these lines were not competing, and the above exception did not render them within the meaning and effect of the provisions of the constitution of 1875, inhibiting the consolidation of railroad corporations owning parallel and competing lines."

It will be observed that it is admitted in the opinion, in effect, that at Lincoln, and within ten miles thereof, that the defendant road and the Burlington & Missouri River road were competing lines. If we take ten miles square in every direction from Lincoln, we will have 400 square miles of territory, which at the present time contains more than 50,000 people. This territory is sufficient to form a county, and is the minimum number of miles fixed by the constitution for that purpose. Yet the fact that the de-

fendant is a competing road with the Burlington & Missouri River road is spoken of as though it was a trifling matter, notwithstanding the language of the constitution that there shall be no consolidation, either in the stock, property, franchises, or earnings, or any part thereof, with any other parallel or competing line. The object of the constitutional convention was to prevent one or two corporations from purchasing parallel or competing lines and thus prevent competition. The defendant, if disconnected with the Burlington & Missouri River road, is a competing line for business in the territory named, and might, perhaps, by carrying for lower rates than the Burlington & Missouri River road, benefit every resident of the city of Lincoln and the territory adjacent, and thus induce new enterprises and promote the prosperity, not only of the city, but of the state. It is a well known fact, also, that the road was originally planned to extend to Columbus and there form a competing line with the Union Pacific railway, and the records of this court show that the residents of Platte county donated $100,000 of its county bonds to that road, presumably to obtain a competing line. The majority opinion would allow the Burlington & Missouri River railroad to purchase the Union Pacific Railway as a competing line. It is well known also that the defendant line crosses the Burlington & Missouri River line at Seward, and would be a competing line there. It also crosses two Burlington & Missouri River lines at Lincoln, and a Burlington & Missouri River road at Tecumseh, and would be a competing line there. If competition could affect the rates of transportation for ten miles on each side of Lincoln, it would do the same for Columbus, Seward, and Tecumseh. Thus, if Lincoln, by reason of reduced rates, was enabled to pay an increased price for corn or stock, or to sell goods at a lower rate than without such competition it would be enabled to do, the same benefits would apply to Tecumseh, Seward, and Columbus, and

other towns along the line of the defendant road, and attention being called to these lower rates on that line would cause a reduction of rates on other lines in the state; but it is a narrow view of the law to limit the benefits to be derived from competition to the cities named. The defendant road, crossing or connecting, as it does, every important railway line but one in the state, would, if permitted to remain as when constructed, an open and competing line, greatly benefit the people of the entire state. I am very confident also that this court has no power, if admitting that the defendant is a competing line at the most important point on the road, as is done in the opinion in this case, to declare that such consolidation is not prohibited by the constitution. There stands the constitutional provision, like a wall of rock, prohibiting such consolidation, or any consolidation, in such cases. Stronger language could not be used : "*No* railroad corporation  *  *  *  shall consolidate its stock, property, franchises, or earnings, in whole or in *part*, with any parallel or competing railway line." It is not in the power of this court, therefore, to declare the consolidation in this case valid, and the time will come when the majority opinion will be held to be clearly in violation of the provisions of the constitution.