THE STATE ex inf. FRANK W. McALLISTER, Attorney-General, ex rel. E. W. MANION, ALEXANDER GREENWELL et al., v. ALBANY DRAINAGE DISTRICT.

In Banc, October 8, 1921.

1. **QUO WARRANTO: Attorney-General: Public Interest.** The Attorney-General, without leave, has the right, at any time, to file in the Supreme Court an information in the nature of a *quo warranto* in any matter in which the public interest is involved, and by public interest is meant an interest in which a class or community have a pecuniary interest and by which their rights or liabilities, as a class or community, are affected.

2. ———: ———: ———: **Drainage District: Extension of Boundaries.** A *quo warranto* proceeding to test the validity of the judgment of a circuit court extending the boundary lines of a legally organized drainage district so as to add thereto other large tracts of land, instituted by the Attorney-General at the relation of the owners of the lands so added, in which it is alleged in the information that the statute did not empower the circuit court to render the judgment and that the district is unlawfully usurping and improperly exercising corporate franchises over said lands, cannot be main-

290 Mo.—3

tained, since the matters involved are mainly, if not altogether, private, and the public, neither in fact nor upon any substantial theory, has any interest in the controversy.

3. ———: ———: ———: ———: ———: **Misuser of Corporate Power.** The extension by the circuit court of the corporate boundaries of a drainage district so as to include other large tracts of lands is neither an assumption nor an abuse of the corporate powers of such public corporation, but simply a violation of the private rights of the owners of such lands, and under such circumstances *quo warranto* at their relation to oust the district from exercising corporate authority over the lands will not lie.

4. ———: ———: ———: ———: **Rules Applicable to Municipal Corporation: Extension of Boundaries.** Drainage districts are public corporations or corporate subdivisions of the State, authorized to exercise the powers granted to them for the purposes of their creation, within their territorial jurisdiction, as fully and with like authority as muncipal corporations exercise their powers; and being such, the validity of an act of a drainage district extending its corporate boundaries cannot be raised by *quo warranto*, any more than can the act of a city extending its corporate limits so as to include farming lands contrary to the owner's wishes can be so raised.

5. ———: **Drainage District: Collateral Attack Upon Organization.** A drainage district being a municipal corporation, the legality of its organization cannot be collaterally attacked or inquired into at the suit of individuals.

6. ———: ———: **Extension of Boundaries: Judgment of Circuit Court: Judicial Act: Collateral Attack.** The jurisdiction of the circuit court having attached upon the filing of a petition therein to extend the boundaries of a drainage district to include other large tracts of land, any errors of fact or of law which may have been committed by the court in reaching its conclusions and in the rendition of its judgment extending the boundaries cannot be inquired into in a *quo warranto* suit, unless there was illegality in the proceeding or fraud was practiced. The court's action was judicial, and any error committed in the judgment rendered cannot be reviewed by *quo warranto*.

## *Quo Warranto.*

WRIT DENIED.

*Kelso & Kelso, C. E. Gibbany,* and *Perry S. Rader* for plaintiff.

(1)  *Quo warranto* is a direct proceeding by the state and is available for nullifying the exercise of legislative power by a municipality, or by the legislative agent, in this case the circuit court.  Sec. 2066, R. S. 1919; Sec. 2631, R. S. 1909; State ex inf. Killam v. Colbert, 273 Mo. 198, 209; Black v. Early, 208 Mo. 308; State ex rel. v. Wilson, 216 Mo. 275; State ex rel. v. Gravel Road Co., 187 Mo. 446; State ex rel. Brown v. Westport, 108 Mo. 582; State ex rel. v. Westport, 116 Mo. 582; Lehigh P. & T. Co. v. Town of Lehigh, 156 Iowa, 387, 398.   (2)   To nullify the attempted extension of its corporate limits, the suit should be brought directly against the corporation.   23 Am. & Eng. Ency. Law, p. 662, b; City of East Dallas v. State ex rel. Putz, 73 Tex. 370; People v. Peoria, 166 Ill. 517; State ex rel. White v. Small, 131 Mo. App. 470; State ex inf. v. Fleming, 147 Mo. 9-12; State ex inf. v. Fleming, 158 Mo. 567, 568; State ex inf. Major v. Kansas City, 233 Mo. 171; State ex inf. v. Woods, 233 Mo. 382.   (3)   It has been ruled by the court in banc that the extension of the boundary lines of the Albany Drainage District by the judgment of the Circuit Court of Gentry County was the exercise of legislative power by an administrative agent.   State ex rel. Manion v. Dawson, 284 Mo. 490, 225 S. W. 97.   (4)   The judgment of the circuit court extending the boundary lines of the drainage district so as to annex relators' land and other lands, being an exercise of legislative power by an administrative agent, was not *res adjudicata.*  State ex inf. v. Fleming, 147 Mo. 2, 11; State ex rel. White v. Small, 131 Mo. App. 470; State ex inf. v. Calbert, 273 Mo. 198; State ex rel. v. Wilson, 216 Mo. 215, 275; Kayser v. Trustees of Bremen, 16 Mo. 88; Woods v. Henry, 55 Mo. 560; State ex rel. v. McReynolds, 61 Mo. 203; State ex inf. v  Woods, 233

Mo. 357. (5) All the sections of the Act of 1913, Laws 1913, pp. 232 to 267, should be considered together, in order to arrive at the meaning of Section 40. In order to prevent one section of a statute from conflicting with the entire scope of legislative action, it is sometimes necessary to depart from a literal construction, and adopt the one that removes the conflict and produces harmony. State to use v. Heman, 70 Mo. 441, 451; Home Ins. Co. v. Wickham, 281 Mo. 300, 315; State ex inf. v. West Side Ry. Co., 146 Mo. 155, 167. (a) It is either (a) necessary to read the fundamental conditions for organizing a drainage district prescribed by Section 2 into Section 40 and apply them to the extension of the boundaries to include other large tracts, or (b) to rule that Section 40 is a mere correction statute and does not authorize the court to extend the boundaries to include other large tracts, or else Section 40 is no law at all and must be declared void for uncertainty. Bittle v. Stewart, 34 Ark. 224; Cook v. State, 26 Ind. App. 278; In re Hendricks, 60 Kan. 796, 806; Chaffee's Appeal, 56 Mich, 244; Matthews v. Murphy, 23 Ky. L. Rep. 750; State v. Gaster, 45 La. Ann. 636; People v. Taylor, 96 Mich. 576; State ex rel. v. Ashbrook, 154 Mo. 396; State v. West Side Ry. Co., 146 Mo. 155; State v. Excelsior Sp. Light Co., 212 Mo. 101; Merchants Exchange v. Knott, 212 Mo. 616, 636 to 643; State ex rel. v. Fort, 210 Mo. 558; State v. Partlow, 91 N. C. 550, 552. (b) A municipal or quasi-municipal corporation possesses and can exercise only such powers as are granted in express words, or those necessarily incident to or implied in the powers expressly granted. State ex rel. v. Wilder, 200 Mo. 105; Knapp v. Kansas City, 48 Mo. App. 492; Nishnabotna Drain. Dist. v. Campbell, 154 Mo. 157. (c) Section 40 of the Act of 1913 fixed no limits to the amount of lands that may be added by the extension of the boundaries of a drainage district. It does not require the lands to be swamp or wet or overflowed. If it authorized the judgment rendered by the circuit court in this case, it would have authorized one that extended the boundaries north

to Iowa and south to the Missouri River. It would also have authorized a judgment extending the boundaries to include all other farm lands in the State. The only conditions it imposes are (a) that the petition be filed by the board of supervisors or owners of lands adjacent to the district; (b) that notice be given; (c) that objectors may file objections; (d) that the court hear the petition and objections in a summary manner; (e) enter a decree according to its findings, and (f) appoint commissioners to assess benefits and damages. It does not require the court to be just or reasonable or to exercise a reasonable discretion. It does not indicate what the objections shall be. The circuit court has no judicial discretion in construing it, for this court has ruled, 225 S. W. 97, that the extension of the boundary lines of a drainage district is the exercise of legislative or administrative power, delegated to the court as an administrative agent by the state. If said Section 40 must stand alone, it is either (a) a correction statute, limiting the hearing and objections to a correction of errors in the plan for reclamation and the decree incorporating the district, or (b) is so incomplete and uncertain as to be void. (6) Sections 2 and 40 of the Act of 1913 must be read together, and when read and considered together they mean that all the fundamental conditions for organizing a drainage district prescribed by Section 2 must be present before the circuit court can extend the boundaries to include other large tracts. Grimes v. Reynolds, 184 Mo. 688; Grimes v. Reynolds, 94 Mo. App. 584; Sales v. Barber Asphalt Pav. Co., 166 Mo. 667; Lewis-Sutherland on Stat. Construction, secs. 368, 443; State ex rel. v. Dearing, 173 Mo. 492; Roth v. Gabbert, 123 Mo. 32; State ex rel. v. Fort, 180 Mo. 112; King's Lake Drain. & Levee Dist., 176 Mo. 557; Ewing v. Vernon County, 216 Mo. 692; State ex rel. v. Wiggins Ferry Co., 208 Mo. 622, 639; State ex rel. v. Chariton Drain. Dist., 252 Mo. 360; State ex rel. v. West, 272 Mo. 315. (7) If said Section 40 authorizes the extension of the boundary lines of an existing drainage district so as to include other large

tracts, and the conditions prescribed by Section 2 must be read into Section 40, then the petition filed by the board of supervisors to extend the boundaries will not authorize the circuit court to entertain it unless it shows on its face (1st) that the lands to be added, together with those already contained in the district, constitute one contiguous body, or drainage unit, of swamp, wet or overflowed lands, or lands subject to overflow, and (2nd) that the purpose of extending the boundaries is to reclaim 'the lands to be added from the effects of water either (a) for agricultural or sanitary purposes or (b) to promote the public health, convenience or welfare, or (c) to conserve some other public utility or benefit, and (3rd) that the owners of a majority of the acres to be added have consented to the extension, either by joining in the petition or by filing their separate written consent. State ex inf. v. Woods, 233 Mo. 357; 32 Cyc. 1424. (a) All jurisdictional facts must affirmatively appear upon the face of the proceedings and no presumptions are indulged as to matters not so appearing. State ex rel. v. Wilson, 216 Mo. 277; State ex inf. v. Woods, 233 Mo. 377; State ex rel. v. Page, 107 Mo. App. 213; State ex rel. v. Seibert, 97 Mo. App. 213; Ry. Co. v. Campbell, 62 Mo. 588; Ellis v. Pac. Ry. Co., 51 Mo. 203; Ry. Co. v. Young, 96 Mo. 39; Leslie v. St. Louis, 47 Mo. 474; Nishnabotna Drain. Dist. v. Campbell, 154 Mo. 157. (b) The supervisors' petition to extend did not show upon its face the affirmative facts necessary to authorize the circuit court to entertain it. It did not show either (a) that the lands to be added were a part of the contiguous body, or drainage unit, of which the lands in the organized district was the other part, or (b) that the purpose of the extension was to promote some public purpose or (c) that the owners of a majority of the acres to be added, or the owners of any of them, had consented to the extensions. (c) The evidence clearly establishes that the owners of a majority of the acres to be added had not consented to the extensions. (d) The evidence clearly shows that the lands in the Northern Extension

and the lands in the district organized constituted separate drainage units, and did not constitute a "contiguous body" within the meaning of those words as used in Section 2.   (e)  By no fair construction of words can the words "contiguous body" used in Section 2 be expanded to include the lands lying along Middle Fork seven or eight miles, and lying along West Fork four or five miles, above the point where their waters unite with those of East Fork to form the main Grand River.   Ingersoll on Public Corporations, pp. 151 et seq.; Traux v. Pool, 46 Iowa, 256; Elsberry Drain. Dist. v. Harris, 267 Mo. 153. The words "adjacent thereto" used in Section 9 of said Act of 1913, and in the notice prescribed by Section 40, mean adjoining, next to, close to, in the neighborhood of. 1 C. J. 1194.   (8)  If Section 40 is interpreted to mean that the circuit court can extend the boundaries of a drainage district to include other large tracts and subject them to the payment of taxes to pay for drainage works in the district as organized and through the extended areas, upon the petition of the supervisors alone, and without the consent of the owners of any of the lands to be added and against their written protest, the petition filed by the supervisors on July 26th was premature, and the circuit court had no right to entertain it, because there had been no effort made to drain or reclaim the lands contained in the district organized and no effort made to ascertain whether the costs of drainage works for draining, leveeing and reclaiming the lands contained in the district organized would be less than the amount of benefits assessed against the lands in the district.   Section 5, 9, 10, 12 to 16, and 37, Act of 1913. These sections clearly mean that a drainage district must first demonstrate, by pursuing the methods by them prescribed, that it has a right to continued existence before it can have it boundaries extended, even if Section 40 authorizes an extension to include other large tracts.   Elsberry Drainage Dist. v. Harris, 267 Mo. 315. (a)  Until it is made apparent that the costs of draining, leveeing and reclaiming the lands contained in the dis-

trict organized do not exceed the benefits assessed against the lands therein, the district is a mere tentative or conditional incorporation. Secs. 16 and 37, Laws 1913, pp. 241, 253; In re Drainage District, 270 Mo. 165; Carder v. Fabius Drain. District, 262 Mo. 554, 559. (b) A mere tentative or conditional corporation has no right to extend its boundaries to include other large tracts of land. St. Joseph & Iowa Ry. Co. v. Shambaugh, 106 Mo. 566; City of Hopkins v. Council Bluffs Ry. Co., 79 Mo. 100; Orrick School District v. Dorton, 125 Mo. 442, 444; State ex rel. v. Arnold, 36 Ind. 41; People ex rel. v. Swearingen, 273 Ill. 630; People v. Darst, 265 Ill. 359; Wayne Drainage Dist. v. Boggs, 262 Ill. 338; Tennessee Drainage Dist. v. Moge, 258 Ill. 296. (9) In no event can the boundary lines of a drinage district be extended to include other large tracts, against the consent of the owners of the land to be added, unless (a) the extension is necessary for the proper reclamation and efficient drainage of the lands contained in the district organized and (b) the lands within the extended territory will be benefited by the drainage works contemplated by the execution of the adopted plan for reclamation. "To authorize a drainage district organized under these acts to extend its limits over other lands without the consent of the owners, the lands of the district and those to be annexed must bear such a relation to each other that the proposed improvement will be of mutual benefit." Elsberry Drain. Dist. v. Harris, 267 Mo. 139, 159; Myles Salt Co. v. Iberia Drain. Dist., 239 U. S. 485. The evidence in this case shows (a) that, if the extensions had not been made in this case, only about one hundred acres in the district organized would not have the best protection, and (b) that neither the lands in the Northern Extension nor the lands in the Southern Extension would be benefited by the execution of the proposed plan for reclamation. (10) Section 40 of the Act of 1913 is a mere correction statute, designed and intended to afford a means to so extend the boundaries of an organized district as to include lands which were erroneously omit-

ted from the decree incorporating the district by correcting errors therein, and does not authorize the circuit court to extend the boundaries of an incorporated district to include other large tracts. That it is a mere correction statute is shown (a) by a careful study of the section itself as a whole, (b) by comparing it with Section 45, (c) by comparing its words with Section 2, (d) by the words of Section 15 which prohibit a change in the plan for reclamation by commissioners, or by the supervisors and engineer, or in any other manner except by the circuit court, after notice, (e) by a consideration of the fact that the drainage works and construction contracts are all under the control of the supervisors elected by the owners of the lands in the district organized, and that the owners of the lands annexed have no voice in any of these things or in the election of the supervisors until after the contract for the construction of the drainage works are let, and until after the bonds to pay for the works have been issued and taxes to pay the bonds have been levied (Secs. 5, 6, 17 and 18), and (f) by considering Sections 9, 10, 12 to 16, which require the board of supervisors of a drainage district when incorporated to proceed to construct drains and levees for draining, leveeing and reclaiming the lands in the district organized. (11) If Sec. 40 of the Act of 1913 is not a mere correction statute, and authorizes the circuit court, upon the petition of the supervisors alone, to extend the boundaries of an organized drainage district so as to include other large tracts of lands, without the consent of the owners of any of them, then said Section 40 denies to the owners of the lands so added the immunities and privileges and the equal protection of the laws guaranteed to them by the Fourteenth Amendment of the Constitution of the United States, in that it divides a natural class, the owners of land in the same "contiguous body," into two subdivisions and administers the law in one way for one subdivision and in another way to the other subdivision, in that Section 2 enables the owners of a majority of the acres in the body

proposed to be organized into a drainage district to prevent its incorporation by the mere negative act of withholding their signatures from the articles of association, and Section 40 denies to the owners of a majority of the acres in the lands to be annexed the right to defeat the extension of its boundaries by refusing to consent thereto, and permits the extension against the written protest of the owners of all the lands within the proposed extended territory. State v. Thomas, 138 Mo. 95; State v. Walsh, 136 Mo. 400, 405, 407; Cooley on Constitutional Law (6 Ed.) secs. 481-483; State v. Julow, 129 Mo. 163, 176; Van Riper v. Parsons, 40 N. J. L. 1; State ex rel. v. Railroad, 195 Mo. 245; Gulf Ry. Co. v. Ellis, 165 U. S. 150; State v. Loomis, 115 Mo. 307; Barbier v. Connolly, 113 U. S. 31; State v. Haun, 61 Kan. 154; Atchison, T. & S. Fe Ry. Co. v. Matthews, 174 U. S. 107; Southern Ry. Co. v. Greene, 216 U. S. 400, 412; Cotting v. K. C. Stock Yards Co., 183 U. S. 79; Connolly v. Union Sewer Pipe Co., 184 U. S. 556-560; Atchison, T. & S. Fe Ry. v. Vosburg, 238 U. S. 56. (a) The decree of the circuit court extending the boundary lines of a drainage district of 5704.06 acres to include and add thereto 11,039.22 other acres, upon the petition of the supervisors alone, without the consent of the owners of any of the lands added, gave to said Section 40 an interpretation which brought it into conflict with said Fourteenth Amendment, and is void. Cases cited above. Myles Salt Co. v. Iberia Drain. District, 239 U. S. 484; Minnesota v. Barber, 136 U. S. 313, 319. (b) Before the petition of the supervisors can be heard, they must assert, and the facts must make it plain, that the lands to be added, together with those contained in the district organized, constitute a "contiguous body" within the meaning of Section 2, for otherwise Section 40 fixes no limits or restrictions whatever upon the quantity and character of lands that may be annexed to a drainage district by extending its boundaries; and if the lands to be added and those in the district constitute such a "continguous body," then said Sections 2 and 40 divide a

natural class into two subdivisions, and administer the law in one way for one subdivision and in another way for the other subdivision, requiring the consent of the owners of a majority of the acres to the incorporation of a part of the contiguous body, and authorizing them and their supervisors to impose their will on the owners of the lands in the other part of the contiguous body and to exercise corporate franchises over the lands, without their consent. (12) The judgment of the circuit court by which the boundary lines of Albany Drainage District, containing 5704.06 acres, was extended, upon the petition of the supervisors alone, to annex 11,039.22 other acres thereto, the lands so added lying north of the district four miles along East Fork and northwest of the district seven or eight miles along Middle Fork and west of the district four miles along West Fork and south of the district nearly two miles along the main Grand River, and subjecting said lands to taxation to pay for drainage works already planned by supervisors in whose election the owners of the lands annexed have no voice, and done without the consent of any of them, and against the written protest of relators, was an arbitrary and unreasonable exercise of legislative power, was an abuse of the law, even if it permits the boundaries of a drainage district to be extended to include other large tracts, and was oppressive; and if said Section 40 permits such an extension it is so palpably unjust and oppressive as to be void. Heineman v. Sweat, 130 Ark. 70; Coffman v. St. Francis Drain. Dist., 83 Ark. 54; French v. Barber Asph. Pav. Co., 181 U. S. 324; Kelly v. Meeks, 87 Mo. 396; Corrigan v. Gates, 68 Mo. 544; Copeland v. St. Joseph, 126 Mo. 431; State ex inf. v. Kansas City, 233 Mo. 162; State ex rel. v. Mining Co., 262 Mo. 504; City of Plattsburg v. Riley, 42 Mo. App. 23; City of Cape Girardeau v. Riley, 72 Mo. 223; City of Tarkio v. Cook, 120 Mo. 9; Elsberry Drain. Dist. v. Harris, 267 Mo. 148; State ex rel. v. Birch, 186 Mo. 219; Commerce Trust Co. v. Blakley, 274 Mo. 52; State ex rel. v. Reynolds, 61 Mo. 203; City of Orlando v. Orlando W. & L. Co., 50

Fla. 207; 1 McQuillin on Municipal Corporations, secs. 267, 269; McCloskey v. State ex rel., 23 S. W. (Tex.), 518; St. Louis v. Heitzeberg Pack. Co., 141 Mo. 376, 384; St. Louis v. Dorr, 145 Mo. 466; Hays v. Poplar Bluff, 263 Mo. 516; St. Louis v. Theatre Co., 202 Mo. 699. (13) If Section 40 is not a mere correction statute, but authorizes the circuit court, upon the petition of the supervisors alone, to extend the boundaries of an organized drainage district to include other large tracts, without the consent of any of them, and without extending to any of them any voice in the choosing of the supervisors who employ the engineer, determine the location, dimensions and character of the drainage works, contract for their construction and issue the bonds and determine the amounts of the uniform and installment taxes, all before the owners of the annexed lands will have any right to vote for supervisors, then said section deprives the non-consenting owners of the lands in the extended territory of their liberty and property without due process of law, guaranteed to them by Section 30 of Article II of the Constitution of Missouri, and denies to them their natural right to liberty and the enjoyment of the gains of their own industry, guaranteed to them by Section 4 of Article 11 of said Constitution as the principal office of government, and denies to them the due process of law guaranteed to them by Section 1 of the Fourteenth Amendment of the Constitution of the United States. State ex rel. v. Ashbrook, 154 Mo. 393-396; Barber Asphalt Pav. Co. v. Ridge, 169 Mo. 376, 387; Home Tel. Co. v. Los Angeles, 227 U. S. 278; Wilmington City Ry. Co. v. Taylor, 198 Fed. 159; Norwood v. Baker, 172 U. S. 269; French v. Barber Asph. Pav. Co., 181 U. S. 324; Tonawanda v. Lyon, 181 U. S. 389; Webster v. Fargo, 181 U. S. 394; Cass Farm Co. v. Detroit, 181 U. S. 396; Detroit v. Parker, 181 U. S. 399 and 401; Union Refrig. Transit Co. v. Kentucky, 199 U. S. 194; Myles Salt Co. v. Iberia Drain. Dist., 239 U. S. 478; St. Louis v. Dreisoerner, 243 Mo. 224; Murford v. Unger, 8 Iowa, 82; Longworthy v. Dubuque, 13 Iowa, 86. (14) Relators have no remedy except by *quo warranto*.

(a)  They were not entitled to an appeal from the judgment of the circuit court.  Drainage Dist. v. Meyer, 277 Mo. 439.  (b)  A writ of error was not available.  In re Birmingham Drainage Dist., 274 Mo. 140.  (c)  The judgment of the circuit court, being the exercise of delegated legislative power by an administrative agent, could not be quashed on *certiorari*.  State ex rel. Manion v. Dawson, 284 Mo. 490, 225 S. W. 97.

*J. W. Peery* and *D. D. Reeves* for defendant.

(1)  *Quo warranto* is in no sense a writ of correction or review, and mere errors of judgment will not be reviewed in this proceeding.  This court will only inquire as to whether the judgment of the circuit court extending boundary lines is valid, or whether the same is void for want of jurisdiction, fraud or possibly for unreasonableness, a question much in doubt.  State ex inf. v. Fleming, 158 Mo. 558; State ex rel. v. Job, 205 Mo. 1. (2)  If this court should hold that it will review the reasonableness of the action of the circuit court in this proceeding, then its unreasonableness must so flagrantly appear as to suggest an abuse rather than a lawful use of its powers.  28 Cyc. 281; Heman v. Shulte, 166 Mo. 409;  Land & Imp. Co. v. St. Louis, 257 Mo. 291;  McGhee v. Walsh, 249 Mo. 266.  (3)  It is insisted in divers places in the relator's brief and argument that the action of the circuit court in extending the boundary lines in this proceeding was wholly arbitrary, and unreasonable, and upon this proposition we offer the following observations:  (a)  There is nothing on the face of the record in this case, or in the evidence (if the court should deem it proper to examine the same) to show or even suggest that the action of the circuit court in extending the boundary lines to include relator's lands was unreasonable.  Upon the contrary, the record shows that it was a reasonable and valid exercise of the combined judicial and legislative powers vested in the circuit court by the drainage law.  The petition alleges, and the decree finds,

that all of these lands were swamp and overflowed in whole or in part; and that they would be reclaimed by the plan of drainage that had been adopted by the board of supervisors, and that no other plan would effectually reclaim the lands of the relators, and that no other or less extensive plan would reclaim the lands already in the district. These facts appearing and being found by the court, make it clear that the circuit court, in extending the boundary lines of the defendant district, acted reasonably and within the law, as laid down by this court. Drain. Dist. v. Turney, 235 Mo. 93, 97; Elsberry Drain. Dist. v. Harris, 267 Mo. 152; Hislop v. Joplin, 250 Mo. 588, 599. The question of unreasonableness of the court's action must depend upon the facts in this proceeding. This court will confine itself to the findings and recitals in the record. State ex rel. v. Fleming, 158 Mo. 562; State ex rel. v. Job, 205 Mo. 32. (4) It is insisted in many places in relator's brief and argument that Section 2 and Section 40 of the drainage act must be read together and all of the provisions of Section 2, a section providing for the organizing of drainage districts by private individuals, must be read into Section 40, the section providing for the extension of boundary lines of the drainage district, after it has been organized and incorporated. This proceeding was had in strict conformity to Section 40 of the Circuit Court Drainage Act of 1913. Section 2 of said act relates to an entirely different matter, to-wit, the organization of drainage districts by petition of indivduals. There is nothing contradictory in the provisions of these sections when the purpose of each is considered. Section 2 relates to the original formation of the district, and Section 40 relates to an extension of the boundary lines of drainage districts, and is complete within itself. Not only is this so, but it provides a usual, orderly and lawful method to effect that purpose. It is too well established to admit of denial, that in extending boundary lines a municipal corporation may take the initiative, and bring in other lands without the consent of the owners. And this

court has applied this rule and doctrine to drainage districts. Drain. Dist. v. Turney, 235 Mo. 80, 90, 98; Houck v. Little River Drainage Dist., 239 U. S. 261, 60 L. Ed. 273. The record in this case complies with and answers every jurisdictional requirement, and finds the presence of each fact necessary to a valid judgment for the extension of the boundaries of a drainage district under Section 40 of the Drainage Act of 1913, and under prior laws. Elsberry Drain. Dist. v. Harris, 267 Mo. 152; Drain. Dist. v. Turney, 235 Mo. 95, 98. To hold that Section 2 of the Drainage Act and its provisions should be treated as if incorporated into Section 40 would lead to startling and unreasonable results. In the first place, the petition under Section 2 can only be filed by the owners of the majority of the acres sought to be organized into a district. This provision, if applied to Section 40, would nullify and destroy the power of the board of supervisors to file the petition under Section 40. The petition provided for in Section 2, while in one sense a petition, is much more than a petition, and is in reality articles of association entered into by the petitioners, by which they bind themselves to do and perform the things therein, by the terms of Section 2 required to be stated, while the petition provided for by Section 40 is a mere petition to the circuit court asking the action of the court as provided for in Section 40. In the petition and articles of association provided for by Section 2, it is required that the name of the district should be stated, the number of years it is to continue, that the owners of the real estate and other property within said district, whose names are subscribed to said articles, are willing to and do obligate themselves to pay the tax or taxes that may be assessed against their respective lands or other property, to pay the expense of organizing and making and maintaining the improvement that may be necessary to reclaim their lands. It is obvious how foolish, unreasonable and senseless these statements would be in a petition to extend the boundary

lines of a drainage district under said Section 40. (5) By many different expressions found in various places in the relators' brief and argument it is insisted that under Section 40 properly construed boundary lines of a drainage district may not be extended against the consent of the owners of the lands to be included within the district. Such a construction of Section 40 would deprive the board of supervisors of the district, acting by themselves, of the power to file the petition asking the extension of boundaries, which power is in Section 40 clearly and distinctly given. Furthermore, the proceeding under Section 40 is, by the terms of said section, an adversary proceeding, requiring a notice to be given to all persons interested in property to be affected thereby, providing for objections to be filed to said petition, for a trial, all of which would be unnecessary if the consent of the owners of the land to be included in the district must be obtained before the boundary lines of a district could be extended. Laws 1913, p. 254, sec. 40. (6) That Section 40 of the 1913 Drainage Act must be construed to be a mere correction statute and that it does not give to the circuit court power to add to a drainage district large numbers of acres not included in the district at the time of its organization, would be a gross misconstruction of said Section 40. Section 40 expressly provides that under the petition of the board of supervisors the boundary lines of the district may be extended, "so as to include lands not described by or included in the articles of association and decree of the court incorporating the district." No limits as to the quantity of lands that may be added to a drainage district are contained therein. Under said section the circuit court, acting upon a petition filed under the provisions of said section, has both judicial and legislative discretion to investigate and consider all of the facts and circumstances surrounding each particular case wherein its jurisdiction is invoked, and to render such judgment and decree as the facts and circumstances of each particular case require, that complete justice may be done and the public interest subserved.

Lands adjacent to a drainage district which will be bene-
fited by the execution of the plan of reclamation adopted
by the drainage district may be included within the bound-
ary lines of the district against the will and the consent of
the owners thereof, in order that justice may be done, and
said lands made to bear their fair proportion of the
burden of the improvement, and that without any re-
gard to whether errors have been made needing correc-
tion, or not.   Laws 1913, p. 254, sec. 40; Drainage Dis-
trict v. Turney, 235 Mo. 80; Elsberry Drain. Dist. v.
Harris, 267 Mo. 139.   (7)   The mere fact that a person
or his property has been included in a drainage district
in no manner effects his rights, provided his property
has not been benefited or damaged, and this is one of the
controlling reasons why neither an appeal or writ of
error will lie from a judgment incorporating a district,
or from a judgment extending the boundary lines of
such district.   In re Birmingham Drain. Dist., 270 Mo.
164; Birmingham Drain. Dist. v. Railway, 274 Mo. 140;
In re Wilhelmina Drain. Dist., 216 S. W. 530.   And for
the same reasons, it would seem that *quo warranto* would
not lie, for while this court has, under some circum-
stances, held that owners and taxpayers could maintain
*quo warranto* to prevent their lands being taken into
municipal corporations, where they would immediately
become taxable with certainty, on the ground that they
had sufficient interest to enable them to maintain such
action, that principle would not seem to apply to the
extension of boundary lines of a drainage district, under
the Act of 1913, where the lands would not be taxed at
all by reason of their being incorporated into the dis-
trict, and never would be taxed unless it should be later
determined by commissioners, appointed to assess bene-
fits, and the circuit court acting upon their report, that
the lands would be benefited by the execution of the
contemplated improvement.   As his rights are not
affected by his lands being incorporated within the
boundaries of the district, there is no more reason why

he should be entitled to *quo warranto* than to an appeal or writ of error. Taxes may be levied and collected before the plan of drainage had been prepared and adopted. Houck v. Drain. Dist., 248 Mo. 373, 239 U. S. 254, 60 L. Ed. 266; Drainage Dist. v. Buschling, 270 Mo. 157; In re Wilhelmina Drain. Dist., 216 S. W. 530, 531; Elsberry Drain. Dist. v. Meyer, 209 S. W. 913. (8) A statute extending the boundaries of a municipal corporation is not unconstitutional because persons in the newly annexed territory may be subject to taxation for the purpose of paying in part the existing indebtedness of such corporation, they not having had any voice in its creation. Torey v. Macon, 119 Ga. 83, 46 S. W. 80, 195 U. S. 626, 49 L. Ed. 350; Valverde v. Shatterck, 19 Colo. 104, 41 Am St. 208. Considering what is said in relator's brief about Section 2 and Section 40 dividing inhabitants into two classes and administering law differently, and the consequent unconstitutionality of the law, the following cases seem to be in point as holding against the contention there made: Carrithers v. City of Shelbyville, 104 S. W. (Ky.) 744; Taggart v. Claypool, 145 Ind. 590, 32 L. R. A. 586. (9) This court will not in this proceeding consider the reasonableness or unreasonableness of the court's action as affecting the validity of this proceeding. The action of the circuit court in fixing boundary lines, while judicial perhaps, in so far as it must determine the facts calling into operation its jurisdiction and powers, is in the main legislative, the court therein acting as a legislative agent. The courts will not examine an act of the Legislature to see if it is reasonable, and for this reason legislative extensions of boundaries have been held not open to attacks for unreasonableness. State v. Swaggarty, 203 Mo. 517; Prior v. Const. Co., 170 Mo. 439; Young v. Kansas City, 152 Mo. 661; Washburn v. Oshkosh, 60 Wis. 453; Madry v. Cox, 73 Tex. 538; State v. Waxahachie, 81 Tex. 626; People v. Fleming, 10 Colo. 553; In re City of Uniondale, 225 S. W. 985; Powers v. Wood, 8 Ohio, 285.

Vol. 290]          APRIL TERM, 1921.     ·          51

State ex inf. McAllister v. Albany Drainage District.

WALKER, J.—The Attorney-General, at the relation of certain individuals, has instituted this proceeding by *quo warranto,* alleging that the respondent is unlawfully exercising the franchises and privileges of a drainage district over the lands of the individual relators. The information admits the corporate character of the respondent as a drainage district under the laws of the State, but alleges that in its attempt to extend its boundaries and exercise authority over the relator's lands it is exercising powers not authorized by its charter.

The respondent was organized as the Albany Drainage District under a decree of the Circuit Court of Gentry County, May 22, 1917, under and in conformity with what is termed the Circuit Court Drainage Act (Laws 1913, p. 232). The district as originally organized comprised 5704.06 acres. On December 9, 1918, the Circuit Court of Gentry County rendered a judgment extending the boundary lines of said district so as to add thereto 11,039.22 acres, making the total area include 16,743.28 acres. More than 3350 acres of this addition are owned by the relators who are protesting, in this proceeding, against the inclusion of their lands in the district. The grounds of objection of relators against the legality of the decree of the circuit court making their lands a part of the district, may be summarized as follows:

1. That no plan was adopted by the district board of supervisors prior to the filing of the petition to extend the boundaries, for the drainage, leveeing and reclaiming the lands contained in the district organized as is required by Sections 9 and 10 of the Act of 1913, Laws 1913, page 237, no certified copy of a plan for reclaiming said lands had been made and transmitted by the secretary of the board to the circuit clerk, as required by Section 12 of said act, and no commissioners had been appointed to assess benefits and damages for the reclamation of said lands, as is required by Sections 12 to 16; and that until all said things were done and it had been shown that the cost of constructing necessary drainage

works for the lands contained in the district did not exceed the benefits to such lands, the district could not be held to have been organized in good faith or had a right to corporate existence, under Sections 16 and 37; and hence the proceeding to extend the boundaries was premature, and should have been dismissed.

2. That the burden was upon the supervisors to demonstrate (1) that it was necessary for the proper reclamation of the lands within the district organized that its boundary lines be extended so as to include relators' lands and the other lands added; and (2) that the lands added by the extension of the boundaries would be benefited and reclaimed by the drainage works it was necessary to construct for the reclamation of the lands within the district; which the evidence fails to establish.

3. That in no event can the boundary lines of a drainage district be extended to include any lands which do not constitute a part of the ''contiguous body of' swamp, wet or overflowed lands or lands subject to overflow'' prescribed by Section 2 of the Act of 1913, and the evidence shows that the lands added by the judgment of the circuit court do not, together with the lands contained in the district as originally organized in 1917, constitute a contiguous body within the meaning of said section.

4. That Section 40 of the Act of 1913, upon which the judgment of the circuit court is based, is a mere correction statute, designed to afford means for correcting errors in the plan for reclamation or in the decree of the court incorporating a drainage district, and does not authorize the court to extend the boundaries of a drainage district upon the petition of the supervisors alone, or upon the petition of the ''owners of land adjacent to such district'' alone, to extend the boundaries so as to include other large tracts of land.

5. That if Section 40 of the Act of 1913 authorizes the circuit court to extend the boundaries of a drainage district to include other large tracts of land, upon the petition of the supervisors alone, it is unconstitutional

and void and in violation of the Fourteenth Amendment of the U. S. Constitution, in that it denies to the owners of the lands to be added the equal protection of the law and the equal privileges and immunities which Section 2 extends to the owners of the lands within the district, in that the owners of a majority of the acres described in the articles of association of a proposed district are by Section 2 given the right to prevent its organization, and Section 40 denies to a majority and to all the owners of the lands to be added the right to prevent the extension of the boundaries of a district so as to include their lands, thereby dividing a natural class into two subdivisions, and this results in administering the law in one way for one subdivision and in another way for the other subdivision.

6.   That Section 40 of the Act of 1913, if it confers upon the circuit court legislative power to extend the boundary lines of a drainage district so as to add other large tracts, is a special law and violative of Subdivision 26 of Section 53 of Article 4 of the Constitution of Missouri, which forbids the General Assembly to pass any local or special law granting to any corporation, association or individual any special or exclusive privilege or immunity, in that it imposes no restrictions or limitations upon the extent to which the boundaries may be extended, and gives to the owners of the lands to be added no voice in the election of supervisors who are to have entire control of the location, dimensions and construction of drainage works through their lands and of levying taxes to pay for the same.

7.   That the extension of the boundary lines of the Albany Drainage District, composed originally of 5704.06 acres, by adding 11,039.22 acres, without the consent of the owners of same and against the written protest of relators, and without a showing that such extensions were necessary for the efficient drainage and proper reclamation of the lands within the district organized, and without a showing that the lands in the extension

would be fully protected and efficiently drained, and that the lands so added, together with those in the district organized, constitute one drainage unit, or contiguous body of swamp, wet or overflowed lands, was an arbitrary and oppressive and unreasonable exercise of the legislative power of the circuit court, as an administrative agent to extend the boundary lines of a drainage district, even if the Act of 1913 vests such court with legislative power, upon the petition of the supervisors alone, to extend the boundaries of a drainage district so as to include other large tracts of land; and that said extension was violative of Section 4 of Article 2 of the Constitution of Missouri, which declares that all persons have a natural right to life, liberty and the gains of their own industry, and violative of Section 30 of Article 2 of said Constitution, which declares that no person shall be deprived of life, liberty or property without due process of law.''

The attitude of the respondent in its opposition to the foregoing contentions of relator may be thus summarized:—

. 1.  That it was at the time the proceedings were instituted in the Circuit Court of Gentry County to extend its boundary lines, a legally incorporated drainage district, under the laws of this State.  [Laws 1913, pp. 232-267.]

2.  That the suit to extend its boundary lines resulted in a decree of said circuit court of December 9, 1918, extending said boundaries so as to include the lands of relators as set forth in this proceeding.  That as such drainage district it was authorized to institute and prosecute said proceeding to the securing of the decree rendered therein.  That this proceeding was under the authority of Section 40 of the said Drainage Act of 1913.  That the petition contained the necessary allegations to effect the purpose intended; that due and proper notice was given of the suit; that the present relators appeared and filed their objections thereto, which were heard by the court and a judgment rendered

in pursuance of said Section 40 of the drainage law of 1913, extending the boundaries of said district over the lands of relators and including same within said district.

3. That it is sought by relators to invoke *quo warranto* as a writ of review.

4. That the circuit court had jurisdiction to enter a judgment extending the boundary lines of respondent and in so doing acted within its jurisdiction; that no fraud was perpetrated upon it to influence or induce its action and its judgment is binding upon relators against all attacks as to sufficiency of evidence.

5. That if this court examines the evidence, the same will be found sufficient to sustain the judgment rendered.

6. That said Section 40 of the drainage act is a valid enactment and subject to none of the objections urged against it by relators.

7. That the inclusion of lands within a drainage district in no manner affects the owner's rights if his property is neither benefited nor damaged.

8. That Sections 2 and 40 of the drainage act refer to different matters and that the reading of Section 2 with Section 40 was not necessary to authorize the proceedings for the extension of the boundaries of the district. That Section 40 is complete within itself.

9. That Section 40 is not a mere corrective statute. While it provides a method for the correction of errors in the process of the organization of drainage districts, it also makes provision for the proceeding by which the boundary lines of a district may be extended to embrace lands not theretofore included in the original decree incorporating the district. That this law does not attempt to limit the quantity of land that may be included in a drainage district by extension where the facts warrant such a procedure.

10. That the facts at bar warranted the action taken and the judgment rendered herein.

I.   A serious question confronts us at the threshold of this case, and that is the right of the State, through the Attorney-General, to institute this action.

**Public Interest.**   That the Attorney-General, without leave, has the right, at any time, to file in the Supreme Court an information in the nature of a *quo warranto* in any matter in which the public interest is involved, is too well established to admit of controversy. But, do the facts at bar, as presented by the pleadings, bring this case within that category?

In this connection it is well to understand what is meant by a "public interest," or an interest of a public nature.   Early English cases, well in accord with American rulings, tell us that a matter of public interest means an interest in which a class or community has a pecuniary interest, in which their legal rights or liabilities, as a class or community, are thereby affected. [Rex v. Bedfordshire, 4 E. & B. 541; Rex v. Labouchere, 14 Cox C. C. 419.]

Aside from the preliminary paragraph of the information, general in its nature and which alleges an exercise and usurpation of franchises and powers not authorized by its charter, there is nothing to indicate that the matter involved is of a public nature.   The incorporation of the drainage district is admitted in the institution of the action against it in its corporate name, and in the averment which follows expressly alleging its corporate existence.   That it possesses a corporate franchise, therefore, and has a right to exist as and exercise the powers of a drainage district, must be conceded.   Hence the allegation that it is usurping or improperly exercising a franchise which is but its right to exist as an artificial entity may be excluded as an inaccuracy or as redundant and the pleading confined to an allegation of a misuse of its powers.   This misuse consists, as alleged, in its extension under the forms of the law, of its boundaries, so as to include certain lands therein of the individual relators.   This fact having been conceded, in what manner is the public interest involved

as to authorize the invoking of *quo warranto?* Prop-·
erty may be said to be clothed with a public interest
when used in a manner to make it of public consequence
and thereby affect the community at large. [Munn v.
Illinois, 94 U. S. 113, 24 Law Ed. 77.] While in form
this proceeding is in behalf of the public to test a cor-
porate franchise, the matters involved are mainly, if not
altogether private and the public, neither in fact nor
upon any substantial theory has any interest in the con-
troversy. [State ex inf. Attorney-General Crow v. Rail-
road, 176 Mo. 687.] While a drainage district cor-
poration is public in its nature, the exercise of its powers
in the inclusion of additional lands within its boundaries,
if in excess of the statute of its creation, is not such a
misuser as to authorize the invoking of *quo warranto*
to forfeit its charter in the absence of any showing of a
resultant injury to the public. The act, if committed
by the corporation, as alleged, only calls for the redress
of a wrong sustained by relators at the hands of the
corporation. If guilty of a misuser of its franchise, it
must be such as to work or threaten a substantial in-
jury to the public. While it is true there is a presump-
tion of a resulting public injury usually inseparable
from the perversion, usurpation or non-user of a fran-
chise, neither is shown under the facts at bar. [State
ex rel. Crow v. Lindell Ry. Co., 151 Mo. 162; State v.
R. R. Co., 50 Ohio St. 239; Greene v. People, 150 Ill.
513; State v. Railroad, 38 Neb. 437.] There is neither
an assumption, nor an abuse of corporate power, but
simply, according to relators' allegations, the violation
of a private right. Under such circumstances, *quo war-
ranto* will not lie. [State ex inf. Wear v. Bus. Men's
Club, 178 Mo. App. 548, 163 S. W. 901.]

The question as to the propriety of the proceedings
here invoked has several times been exhaustively con-
sidered by the Supreme and Appellate Courts of the
State of Illinois. In People v. Cooper, 139 Ill. 461, a
suit was instituted, questioning, by *quo warranto,*
the enlargement of a drainage district. It was prose-

cuted on the relation of land owners, claiming that they were not within the same system of drainage. The Supreme Court of that State in ruling on this question, said in effect (139 Ill. 1. c. 486), that "the form in which the information is presented would seem to indicate some misapprehension on the part of counsel as to the proper scope and object of a proceeding by *quo warranto*. This misapprehension is manifested by an apparent attempt to combine in the information matters which are properly remediable by this writ with mere private grievances of the relator, for which the law furnishes him a proper remedy, by a private action, either at law or in chancery. *Quo warranto* is not a remedy provided for the vindication of mere private rights. 'The State does not concern itself with the quarrels of private litigants. It furnishes them sufficient courts and remedies, but intervenes as a party only where some public interest requires action. Corporations may, and often do, exceed their authority, where only private rights are affected. When these are adjusted, all mischief ends and all harm is averted. But where the transgression has a wider scope, and threatens the welfare of the people, they may summon the offender to answer for the abuse of its franchise, or the violation of its corporate duty.' In those portions of the information to which the demurrer was sustained the relator attempts to set out and avail himself as a ground for issuing the writ, of the action of the commissioners in attempting to levy upon his land assessments in excess of the benefits which said land would receive from said proposed system of drainage, and that, too, without giving him notice or affording him an opportunity to be heard in relation thereto, and in instituting various proceedings for enforcing the collection of such assessments; in taking and appropriating to the uses of the district certain drains which the relator had already constructed on his own land, at a large expense, without compensating him therefor; in filling up and thus destroying the usefulness of one or more of said ditches,

and also in taking portions of the relator's land for the construction of the ditches of the district, and damaging other portions of his land, without making or tendering him compensation therefor.   These allegations, if true, simply show an improper exercise of corporate or official authority on the part of the commissioners for which the law furnishes the relator ample and sufficient remedies at his own suit, and which therefore constitute no ground for interference by the people in their sovereign capacity by *quo warranto.*"

In People v. Drainage District, 193 Ill. 428, the court, after reviewing the Cooper case, supra, and a number of others, held that in the matter there under consideration, which involved the validity of the inclusion of certain other lands than those originally embraced in the incorporation, that it was clearly disclosed to the court that the suit was not one in which the public had an interest, but that it was brought and prosecuted for the benefit of certain relators who objected to proposed assessments and taxation for the construction of what was termed the North Ditch.   The writ of ouster was therefore denied.

In People v. Drainage Commissioners, 31 Ill. App. 219, an action by *quo warranto* was brought to test the validity of the organization of a drainage district.   The proceedings as in the case at bar, were conceded to be regular, i. e. in conformity with the statute.   The irregularity in the incorporation of the district was alleged to consist in a failure of a proper number of land owners to sign the petition for the creation of the district.   In regard to this matter the court stated that the proceeding being in the nature of a collateral attack upon the validity of the incorporation, was unauthorized.   In disposing of the case, however, it was held that it might well be doubted whether the public had any interest in the matter.   "While in form," as at bar, "the proceeding is in behalf of the people to test the right to a corporate franchise, yet in fact, the interests involved are

mainly private, if not wholly so. The court may decline to proceed when such an aspect is disclosed. The issuance of the writ does not end the discretion of the court, and if the case made by the pleadings is such that leave to file would have been refused in the first instance, the court may abate the proceeding.'' The court having held, therefore, that the writ was improvidently issued, declined to grant the relief sought. [High, Extr. Rem., sec. 620.]

II. Drainage districts are public corporations or corporate subdivisions of the State, authorized to exercise the powers granted to them for the purposes of their creation, within their territorial jurisdiction, as fully and with like authority as municipal corporations exercise their powers. [State ex rel. v. Little River Drainage District, 269 Mo. 444, 190 S. W. 897; Houck v. Little River Drainage District, 248 Mo. 373, affirmed, 239 U. S. 254.] Certain general rules, therefore, which the courts have established in regard to the exercise of the powers of municipal corporations are not inapplicable to drainage districts. For example, the validity of an act extending the corporate limits of a city so as to include farming lands, contrary to the owner's wishes, cannot be raised by *quo warranto*.

In discussing this question, the Supreme Court of Illinois, said: ''In this case, there seems to be no question that defendants in error are legally and properly officers of the city, and there can be as little doubt that they may perform all the functions of their offices within the city limits, whatever they may be. If they attempt to pass and enforce ordinances beyond the bounds of the city, or to levy and collect taxes beyond the city limits, such acts would be unauthorized, and might, no doubt, be restrained on a bill properly framed for that purpose. But whether a law which purports to attach territory to the original corporate limits is or is not constitutional, cannot be determined in such a proceeding as this. If the corporate authorities shall attempt to

*Corporate Acts.*

enforce their ordinances against persons in the territory thus annexed, they may raise the question of the validity of the law on their defense, or if they shall levy and attempt to collect taxes on the lands embraced in the portion used for agricultural purposes, the taxpayers might, no doubt, file a bill to restrain their collection, and thus present the question whether the law is valid and binding.'' [People ex rel. v. Whitcomb, et al., 55 Ill. 177.]

The Supreme Court of Indiana held that the legality of the annexation of territory to a city cannot be questioned by *quo warranto*. The court, in discussing this question, said: ''While the principles thus far established indicate the tendency to a somewhat liberal use of *quo warranto* informations, as a means of correcting the usurpation of corporate privileges, the courts will not entertain such informations for the purpose of interfering with or declaring void the legislative action of a municipal body, such as the common council of a city, The power of municipal legislation being properly vested in such a body, the courts will not permit the use of this remedy to inquire into or challenge the manner in which this power has been exercised, nor is it within the legitimate scope of the proceeding by information to declare null and void legislative acts of such a municipal body. Nor will the charter of a municipal corporation be forfeited by proceedings upon an information, because of the passage by the corporate authorities of an alleged illegal ordinance in which they have transcended their powers, the offense charged being at the most but an error of judgment, rather than a wilful abuse of power.'' [State ex rel. v. The City of Lyons, 31 Iowa, 432; State ex rel. v. Town Council of Cahaba, 30 Ala. 66; State ex rel. v. Shields, 56 Ind. 521; City of Peru v. Bearss, 55 Ind. 576; High on Extr. Legal Remedies, secs. 589, 618.]

Applying the foregoing rulings to the case at bar furnishes, in our opinion, ample reason why the writ should be denied. Other well founded rulings of our court, based upon different reasons than those stated, sustain this conclusion.

III. A drainage district is a municipal corpora-
tion, and the legality of its organization cannot be col-
laterally attacked or inquired into at the suit of indi-
viduals. [Barnes v. Mo. Valley Constr.

Collateral Attack. Co., 257 Mo. 175, 165 S. W. 723, Ann.
Cas. 1915-C, 34; Coleman v. Blair, 245 Mo. 680; School
Dist. v. Hodgin, 180 Mo. 70; Burnham v. Rogers, 167
Mo. 17; State v. Fuller, 96 Mo. 165; Catholic Church v.
Tobbein, 82 Mo. 418.]

IV. The jurisdiction of the circuit court attached
to the case at bar upon the filing therein of the petition
to extend the boundaries of the respondent. Errors of
        fact, therefore, if any, which may have been

Judgment: committed by the court in reaching its con-
Review by
Quo Warranto. clusion will not be inquired into, either to
        arrest or disturb the force of the finding
and judgment, or to correct a possible error of fact or
law the court might have made in the inquiry, unless it
appears there was illegality in the proceedings or that
fraud was practised, which could not reasonably have
been seen and averted. The court's action being ju-
dicial, its error, if error was committed, in the rendition
of the judgment, cannot be brought to this court for re-
view by the writ of *quo warranto*. This writ, as we said
in State ex inf. v. Fleming, 158 Mo. l. c. 562, is in no
sense a writ of review. In the Fleming case it was
sought to assail the validity of an order of a county court
in the matter of the incorporation of a city or town. The
Supreme Court held "that to disturb the ruling or judg-
ment of the county court through the office of the writ
of *quo warranto*, all the essential infirmities thereof, and
iniquities therein, resulting from the manner of its pro-
curement, or the fraud upon the court, must be alleged
and proved with the same strictness that would be re-
quired in a bill in equity having for its object the annul-
ment of the final judgment of any court of record of the
State, brought about by fraud or collusion. An error of
fact made by the county court in a matter of calculation,

computation, or of numbers, or of law, upon the question, such as, who are and who are not 'taxable inhabitants' of a designated community, is no more fatal to the integrity, fidelity or conclusiveness of the judgment by that body, ordering the incorporation of the city or town, than would be like errors made by any other court of record of the State. These errors are matters of review upon appeal, where an appeal is provided for, but are not such as impeach the integrity of or go to the very life and existence of the judgment itself, as where fraud and collusion in the procurement of its order or judgment is alleged and shown. In cases of that character a judgment is declared void and of no effect, for the reason and upon the theory that fraud, having entered into it, as into any other transactions of life vitiates its integrity, destroys its validity; because the pretended is not the reality. Under those facts we would have no legal judgment of incorporation, hence no legal officer of the pretended corporation, and a writ of ouster under the inquiry by *quo warranto* would go against those making the assumption. But quite different is the situation where the attempt is to show that the judgment as entered ought never to have been made; that the corporation ought never to have been created; because the court having before it the facts and law for determination, erroneously construed their force and meaning.'' [State ex inf. Fleming, supra.]

In State ex rel. Rose v. Job, 205 Mo. l. c. 32, a proceeding by *quo warranto* was brought at the relation of certain private citizens to test the legality of the organization of a school district and oust certain officials thereof, by reason of the alleged illegality of the organization. Upon a hearing in the circuit court, the judgment of the county school commissioner and certain arbitrators, changing the boundaries of the district, was affirmed. Upon an appeal by the relators to this court, it was held: ''It is clear that under the provisions of this section this court, by the writ of *quo warranto,* would not be authorized to review the error of judgment

by such board of arbitrators. If the record discloses that the board of arbitrators acquired jurisdiction to determine the questions of difference submitted to them and they have rendered a judgment upon such questions, in the absence of a showing that the judgment itself was procured by fraud, then the decision of the board of arbitrators upon the questions of differences submitted to them becomes conclusive."

The rule as applicable to this subject was very clearly and correctly announced in State ex rel. v. Gibson, 78 Mo. App. 170. That was a case involving the powers of a school commissioner under a statute substantially the same as the one in the Job Case, and the court thus announced the law: "As to whether or not the school commissioner had 'sufficient evidence before him' to justify his action in changing the boundary lines between districts numbered 2 and 6 we have nothing to do in this proceeding. The statute contemplates a mere informal investigation by the commissioner as to the propriety of the changes. Having acquired jurisdiction of the matter, he is directed to 'proceed to inform himself as to the necessity of such proposed change, and his decision shall be final.' The record here shows that a dispute, or difference of opinion, had arisen between the different districts, or parts thereof, affected by the proposed changes; that these matters were referred to the respondent as county commissioner; that he proceeded to and did investigate and decide; and his decision therefore, must be treated as a finality."

Under the foregoing rulings, based upon a sufficient similarity of facts to those at bar, to render them precedents in the determination of this case, we are of the opinion that the writ of ouster prayed for herein, should be denied. It is so ordered. All of the judges concur.